In re Petition for DISCIPLINARY AC-
TION AGAINST Robert D. STROBLE,
an Attorney at Law of the State of
Minnesota.

No. C6–91–497.

Supreme Court of Minnesota.

July 24, 1992.

Wendy Willson Legge, Sr. Asst. Director, Lawyers Professional Responsibility Bd., St. Paul, for appellant.

Jack S. Nordby, Meshbesher & Spence, Ltd., Minneapolis, for respondent.

PER CURIAM.

Respondent admits the breach of his fiduciary duties and the misappropriation of trust funds totalling approximately $90,000 from three elderly, female clients. At is-
sue is the appropriate discipline that should be imposed. Judge David E. Christensen, serving as Supreme Court referee, recommended disbarment. The Director of the Office of Lawyers Professional Responsibility concurs, and additionally seeks $750 in costs. Respondent challenges the recommendation of disbarment and asks, in the alternative, for a two year suspension followed by supervision and full restitution. .

I.

Neither respondent nor the Director of the Office of Lawyers Professional Responsibility ordered a transcript of the hearing before the referee; therefore, in accordance with Rule 14(e) of the Rules on Lawyer's Professional Responsibility, the findings and facts of the referee are conclusive.

Respondent is 48 years old and has been admitted to the practice of law in Minnesota since 1972. From 1972 to 1979 he worked as an assistant county attorney and as a part-time private practitioner. He was a solo practitioner in Thief River Falls from 1979 until March of 1991.

Respondent's misappropriations stem primarily from his representation of three clients: Geneva Overum, Anna Breznay and Julienne Brezney. Respondent was attorney and variously, trustee, guardian, and personal representative for these women. Respondent's first misappropriation occurred in June of 1989 when he wrote himself a check for $7,000 from a trust for which he served as trustee. The misconduct continued until he was detected, some twenty months after the first misappropriation. Respondent acknowledged that after he wrote the first check, "it was all downhill." Respondent misappropriated, in total, between $90,800 and $93,300. He used this money to pay professional debts, to purchase stock in his name, and to buy a car for his personal use.

Respondent met Geneva Overum through their mutual church and served as trustee of two trusts established by Ove-

rum in 1988. One trust was an irrevocable trust for flowers to be placed upon certain graves. The second trust was a charitable unitrust which provided that the trust income was to be paid to Overum during her life and, upon her death, to her church. The total principal in these two trusts was approximately $47,000 and respondent misappropriated between $44,000 and $46,500, primarily by issuing checks made out to himself. Overum died in 1991 without knowledge of any misappropriations.

Anna Breznay and Julienne Brezney were sisters who lived together in Thief River Falls.[1] In early 1990, Julienne was the caretaker of Anna, who was of advanced years and incompetent. Sometime shortly before April 18, 1990, Julienne was hospitalized with cancer and Anna had to be placed in a nursing home. Respondent was appointed Anna's guardian on April 18, 1990. Julienne died one month later and respondent was appointed Julienne's personal representative. Anna died six months later at age 85.

Anna's guardianship estate was valued at around $100,000. Respondent misappropriated $12,000 from her estate and used this money to purchase some stocks. Respondent misappropriated approximately $32,900 from Julienne's estate. This money was used to purchase stock, as well as to reimburse respondent for his fees and expenses. These fees and expenses were never approved by the court.

Respondent also acknowledged misappropriating additional funds of approximately $2,000 from his trust account.

In March of 1991, the Office of Lawyer's Professional Responsibility received a complaint from a district court judge regarding respondent's handling of funds and accounting in the estate and guardianship of Anna Breznay and the estate of Julienne Brezney. Respondent subsequently met with the Director of the Office of Lawyer's Professional Responsibility and acknowledged that he had misappropriated trust funds from Anna Breznay and Julienne Brezney, as well as trust funds from the two trusts created by Geneva Overum. Respondent stipulated to waive panel proceedings and to temporary suspension from the practice of law. Respondent has acknowledged his misappropriations and has cooperated fully with the Office in his investigation.

Prior to the disciplinary investigation, respondent repaid $2,415 to one of the Overum trusts. The remainder of his restitution occurred after the commencement of the disciplinary investigation. Respondent has repaid most of the misappropriated money through the liquidation of stocks and by securing a personal loan of $25,840 from his parents.

In January of 1992 respondent was criminally charged in Pennington County with three counts of felonious theft over $2,500 and three counts of felonious theft for temporary taking over $2,500 for the misappropriations of funds from Geneva Overum, Anna Breznay and Julienne Brezney. Minn.Stat. § 609.52, subd. 2(5). Respondent pled guilty to the three counts alleging a temporary taking. Each count carries with it a maximum sentence of imprisonment for not more than ten years or payment of a fine of not more than $20,000, or both. Minn.Stat. § 609.52, subd. 3(2) (1990). The sentencing is pending.

## II.

The historical discipline for extensive misappropriation of client funds is disbarment. *In re Larsen*, 459 N.W.2d 115, 120 (Minn.1990) (citing *In re Austin*, 333 N.W.2d 633, 634–35 (Minn.1983)). The rationale for the imposition of disbarment is not to punish the lawyer, but to protect the public and to deter future conduct of other lawyers. *In re McCoy*, 447 N.W.2d 887, 890 (Minn.1989). While disbarment is often ordered in misappropriation cases, it is not always the elected discipline. Mitigating circumstances may support the imposition

---

**1.** Though sisters, they spelled their last names    differently.

of discipline other than disbarment if that alternative discipline would provide substantially similar protection to the public as that provided by disbarment. *In re Pyles*, 421 N.W.2d 321, 326 (Minn.1988).

Respondent submits that his acknowledgment of his wrong, his renewed ethical commitment, his restitution, his otherwise good record, his cooperation, and the severe impact the proceedings have had on him are mitigating circumstances which support an alternative discipline to disbarment. We acknowledge, in accordance with the referee's findings, that respondent has no prior disciplinary record, that he has fully disclosed his misconduct and has cooperated fully with the disciplinary proceedings, has expressed remorse, and has engaged in community service and pro bono work. We take these mitigating circumstances into account but these factors will not "militate against the imposition of discipline in matters of serious ethical misconduct." *In re Franke*, 345 N.W.2d 224, 229 (Minn.1984).

Respondent's conduct is a severe violation of his professional ethical obligations and fiduciary responsibilities. To say that respondent "misappropriated funds" euphemizes the reality that respondent stole $90,000 from three elderly, vulnerable clients who entrusted respondent with their life savings. This court has said that attorney misconduct that "exhibits callous disregard for the physical and financial well-being of vulnerable, dependent persons" is a very serious offense and the offending attorney has a "heavy burden to persuade the court of his fitness to continue the practice of law." *In re Peterson*, 456 N.W.2d 89, 93 (Minn.1990) (citing *In re Franke*, 345 N.W.2d 224, 228 (Minn.1984)). *See also In re Larsen*, 459 N.W.2d 115 (Minn.1990). Respondent's misconduct was neither accidental nor of isolated occurrence but rather transpired over an approximate twenty month period. Respondent cumulatively violated seven different provisions of the Disciplinary Rules through numerous misappropriations. In light of the

aggravating circumstances in this case, we find that disbarment is the only discipline which can adequately protect the public and it is so ordered.

### III.

Rule 24(a) of the Rules on Lawyers Professional Responsibility provides that "[u]nless this Court orders otherwise or specifies a higher amount, the prevailing party in any disciplinary proceeding decided by this court shall recover costs in the amount of $750." Because of respondent's indigency, the referee did not recommend that respondent pay costs. The Director asks that respondent pay for costs in the event respondent receives sufficient funds to cover the costs in the future. In light of the facts of this case, we decline to order costs to be paid by respondent.