In re Petition for **DISCIPLINARY ACTION AGAINST Willard L. WENTZEL, Jr., a Minnesota Attorney, Registration No. 13160X.**

**No. A05–846.**

Supreme Court of Minnesota.

April 6, 2006.

Martin A. Cole, First Assistant Director, Patrick R. Burns, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for Appellant.

Mark W. Gehan, Elizabeth Clysdale, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, MN, for Respondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent Willard L. Wentzel, Jr., alleging that Wentzel misappropriated his clients' funds. In his answer, Wentzel admitted the shortages in his client trust account and offered mitigating circumstances. After a hearing, the referee concluded that Wentzel had violated Minn. R. Prof. Conduct 1.15 (safekeeping of client funds) and 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). The referee recommended that Wentzel be disbarred with the disbarment stayed upon conditions to be determined by this court, including that Wentzel: (1) be indefinitely suspended from the practice of law; (2) be allowed to petition the director for reinstatement after two years; (3) make periodic reports to the director, and sign releases of information, regarding his treatment for depression; (4) pay a minimum of $900 in costs and disbursements; (5) completely cooperate with the director's monitoring of these conditions; and (6) be immediately disbarred for failure to comply with the above conditions. The director appealed to this court, arguing that disbarment is the only appropriate discipline. We conclude that disbarment is the appropriate discipline in this case.

Wentzel was admitted to practice law in Minnesota on October 30, 1981, and has not been subject to any previous professional discipline. In connection with his law practice, Wentzel maintained a client trust account at Associated Bank. From January 23 to January 26, 2001, and April 25, 2002, to June 4, 2004, Wentzel's misuse of client funds from the account caused shortages in the account. As a result of Wentzel's misuse of client funds, his client trust account became overdrawn on April 28, 2004. Associated Bank reported the overdraft to the director. Upon inquiry by the director, Wentzel acknowledged that the account "became overdrawn due to the advance payment of fees issued to my firm, W.L. Wentzel, Jr. & Associates, PLLC on cases settled and cases anticipated to be settled within the near term of the date that the checks were issued." After the director notified Wentzel of the overdraft inquiry, Wentzel obtained a $62,500 loan and deposited the proceeds in the trust account. This deposit did not rectify the shortage of funds in the account, and the account continued to have a shortage until at least June 4, 2004 (the end of the director's audit period). The shortage was eventually corrected by Wentzel through deposits of his own funds or by retaining earned fees in the account. Wentzel's misuse of client funds involved

30 instances in which he either issued a trust account check to himself without attribution to, or entitlement from, any client or issued a trust account check in payment of client fees and costs, but before depositing underlying client funds in support of the payments.

After the director's audit of Wentzel's trust account for the period of January 1, 2001, to June 4, 2004, the director and Wentzel entered into a stipulation dispensing with panel proceedings pursuant to Rule 10(a), Rules on Lawyers Professional Responsibility (RLPR). The director then filed the instant petition for disciplinary action against Wentzel, alleging misappropriation of client funds in violation of Minn. R. Prof. Conduct 1.15 and 8.4(c). Wentzel answered the petition, repeating his prior explanation for the shortage of funds, and gave the director "reasonable cooperation" during the investigation. Pursuant to Rule 14(a), RLPR, we referred the matter to a referee for a hearing.

The referee held a hearing on October 4 and 5, 2005. At the hearing, in addition to testifying himself, Wentzel presented the testimony of two character witnesses, and that of his psychologist. In his testimony, Wentzel admitted to misappropriating client funds, but sought to show that his depression was the cause of his misconduct. He also testified about personal problems he experienced during the time of his misconduct, including financial problems, the dissolution of his marriage, and child custody proceedings.

On October 27, 2005, the referee filed findings of fact, conclusions of law, and a recommendation for discipline. He found that Wentzel had engaged in intentional misappropriation of client funds. He further found that Wentzel had not established by clear and convincing evidence that he suffered from a severe psychologi-

cal problem at the time of his misconduct. The referee found two aggravating factors: (1) that Wentzel's misappropriation spanned a time period of over two years, involved 30 separate instances, and created an account shortage of $87,957.01 at one point; and (2) that Wentzel "does not have complete insight into the moral and ethical nature of his acts, preferring to characterize them as borrowing rather than theft, though he acknowledges wrongdoing." In mitigation of Wentzel's conduct, the referee found that Wentzel: (1) had not been disciplined previously; (2) had completed restitution, and ultimately no client or entity suffered a financial loss; (3) had, at the time of misconduct, suffered anxiety and emotional distress due to the dissolution of his marriage and child custody proceedings; and (4) had reasonably cooperated with the director.

The referee concluded that Wentzel's conduct violated Minn. R. Prof. Conduct 1.15 and 8.4(c). As noted above, the referee recommended that Wentzel be disbarred with the disbarment stayed.

 Before this court, the director does not contest the referee's findings of fact and conclusions of law, but does contest the referee's disciplinary recommendation, arguing that Wentzel should be disbarred outright. Wentzel argues the recommended discipline is appropriate and also challenges one of the aggravating factors found by the referee. Wentzel ordered a transcript of the referee's hearing. Therefore, under Rule 14(e), RLPR, the referee's findings and conclusions of law are not binding on this court. *In re Wentzell*, 656 N.W.2d 402, 405 (Minn.2003). While not binding, "we give great deference to a referee's findings and will not reverse those findings unless they are clearly erroneous, especially in cases where the referee's findings rest on disputed testimony or in part on respondent's

credibility, demeanor, or sincerity." *Id.* We must be "left with the definite and firm conviction that a mistake has been made" before determining a referee's findings to be clearly erroneous. *Id.* (quoting *In re Strid,* 551 N.W.2d 212, 215 (Minn.1996)).

We first address Wentzel's challenge to the referee's finding. Wentzel argues that the referee's finding that Wentzel lacks insight into his actions is not supported by the record. It is true that Wentzel admitted the misconduct and made statements in his testimony indicating that he understood the seriousness of his misconduct. However, there is also evidence that indicates that Wentzel does not fully appreciate the grave nature of his misconduct. For example, in his sessions with his psychologist, Wentzel characterized his actions as akin to "borrowing" from the trust account. At the hearing itself, when initially asked whether he was entitled to the money he had wrongfully withdrawn from the trust account, Wentzel responded, "Technically I guess not." Wentzel also testified that he considered his actions borrowing instead of stealing. Thus, here, the referee's finding rests in part on the referee's assessment of Wentzel's credibility, demeanor, and sincerity. Given the testimony and the level of deference we give referee findings, we cannot say that we are left with a definite and firm conviction that a mistake has been made. Therefore, we conclude that the finding is not clearly erroneous.[1]

Having concluded that the referee did not clearly err in finding that Wentzel lacks insight into his actions, we turn our attention to the appropriate sanction in this case. While a referee's recommendation for discipline carries great weight, we have final responsibility for determining the appropriate discipline. *In re Edinger,* 700 N.W.2d 462, 467 (Minn.2005). "Disciplinary sanctions for professional misconduct are imposed to protect the public and the judicial system, and to deter future misconduct." *In re Crandall,* 699 N.W.2d 769, 771 (Minn.2005). In determining the appropriate sanction for attorney misconduct, we consider four factors: "1) the nature of the misconduct, 2) the cumulative weight of the violations of the rules of professional conduct, 3) the harm to the public, and 4) the harm to the legal profession." *In re Oberhauser,* 679 N.W.2d 153, 159 (Minn.2004) (quoting *In re Singer,* 541 N.W.2d 313, 316 (Minn.1996)). While we look to similar cases for guidance, sanctions are determined on a case-by-case basis after examining the acts of misconduct and considering both aggravating and mitigating circumstances. *Wentzell,* 656 N.W.2d at 408.

The nature of the misconduct here is the misappropriation of client funds. We generally disbar attorneys who misappropriate client funds. *See, e.g., In re Pierce,* 706 N.W.2d 749, 756 (Minn. 2005); *In re Vaught,* 693 N.W.2d 886, 891

---

1. In addition, Wentzel implicitly argues that this court should find two additional mitigating factors that the referee did not list in his findings. First, Wentzel argues that his "good character and reputation for honesty support the [r]eferee's sanction." Wentzel also implies that his plan "to associate with a law firm to ensure that this never happens again" is a mitigating factor this court should consider when imposing discipline. Each of these factors has been considered by this court when imposing discipline in the past.

*See In re Bernstein,* 404 N.W.2d 804, 805 (Minn.1987); *In re Heffernan,* 351 N.W.2d 13, 15 (Minn.1984). Wentzel offered evidence supporting each of these factors through his own testimony and the testimony of two character witnesses. However, in light of the deference given to the referee's findings and because finding these factors requires an assessment of the credibility of Wentzel and the other two witnesses, the referee's decision not to find these additional mitigating factors was not clearly erroneous.

(Minn.2005); *In re Olson,* 577 N.W.2d 218, 220–21 (Minn.1998). "[M]aintenance of public confidence in the legal profession requires the strictest discipline in misappropriation cases." *In re Austin,* 333 N.W.2d 633, 635 (Minn.1983). However, we have not always disbarred such attorneys. *See, e.g., In re Hanvik,* 609 N.W.2d 235, 242 (Minn.2000); *In re Bernstein,* 404 N.W.2d 804, 805 (Minn.1987). "In cases where this court has not imposed disbarment for extensive misappropriation of client funds, substantial mitigating circumstances were present." *In re Weems,* 540 N.W.2d 305, 308 (Minn.1995). In those cases, lengthy suspensions generally have been imposed. *See, e.g., In re Rooney,* 709 N.W.2d 263, 272–73 (Minn.2006) (18–month suspension); *In re Pyles,* 421 N.W.2d 321, 327 (Minn.1988) (indefinite suspension, at least two years before reinstatement-eligible).

Both Wentzel and the director cite cases that they argue are sufficiently similar to Wentzel's situation to be relevant in informing this court's decision in this case. Wentzel relies heavily on *In re Jellinger,* a case in which the discipline imposed was nearly identical to that recommended by the referee in Wentzel's case. 655 N.W.2d 312, 316–17 (Minn.2003). Jellinger misappropriated client funds, failed to communicate with his clients, neglected client matters, made false statements to clients, and failed to cooperate with the director. *Id.* at 314. Against this misconduct, we balanced the referee's recommendation that disbarment would be too harsh, the fact that Jellinger's depression was shown to have "some causative relationship to his passive misconduct," Jellinger was currently in treatment for depression, and his clients did not ultimately suffer a monetary loss as a result of the misconduct. *Id.* at 316. While Jellinger committed more types of misconduct than Wentzel, Jellinger misappropriated a substantially smaller

amount of funds. *See id.* at 314. Wentzel also argues that we should look to *In re Pyles* when determining his discipline. Like Jellinger, Pyles (who received an indefinite suspension with the possibility of reinstatement after two years) committed more types of misconduct than Wentzel, but Pyles also misappropriated a smaller amount of money than Wentzel and was found to have led "an exemplary life." *See Pyles,* 421 N.W.2d at 322–24, 326–27.

The director argues that our decision in *In re Stroble,* 487 N.W.2d 869 (Minn.1992), demonstrates that the mitigating factors in Wentzel's case are insufficient to avoid disbarment. Stroble misappropriated approximately $90,000 from three elderly clients. *Id.* at 871. While we noted numerous mitigating factors in Stroble's favor (lack of prior disciplinary record, full cooperation, expressed remorse, and participation in community service and pro bono work), Stroble was disbarred. *Id.* However, Stroble misappropriated money from especially vulnerable clients. *Id.* That aggravating factor is not present in Wentzel's case.

The second factor we consider when determining the appropriate sanction is the cumulative weight of the violations. *Oberhauser,* 679 N.W.2d at 159. In this case, Wentzel misappropriated client funds in violation of Minn. R. Prof. Conduct 1.15 and 8.4(c). We have made clear that, standing alone, intentional misappropriation of client funds usually warrants disbarment. *Weems,* 540 N.W.2d at 308. Here, as the referee found, the severity of Wentzel's misconduct is aggravated by the fact that it lasted over two years, involved 30 instances of misappropriation, and caused a trust account shortage of nearly $88,000. This was not a single isolated incident or a brief lapse in judgment.

The next factor we consider is the harm to the public and legal profession caused by the attorney's misconduct. *Oberhauser*, 679 N.W.2d at 159. Wentzel has completed restitution and no client or entity ultimately suffered a financial loss as a result of his misappropriations. However, Wentzel's misconduct has still caused harm because "[m]isappropriation of funds entrusted to an attorney as a fiduciary for his clients is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." *Rooney*, 709 N.W.2d at 270.

Finally, we assess mitigating and aggravating circumstances. *Vaught*, 693 N.W.2d at 890. There are two aggravating factors: (1) the fact that Wentzel's misappropriation spanned a time period of over two years, involved 30 separate instances, and created an account shortage of $87,957.01 at one point; and (2) the fact that Wentzel "does not have complete insight into the moral and ethical nature of his acts, preferring to characterize them as borrowing rather than theft, though he acknowledges wrongdoing." The mitigating factors found by the referee are: (1) Wentzel's lack of prior disciplinary history; (2) Wentzel's restitution, and the fact that ultimately no client or entity suffered a financial loss; (3) the anxiety and emotional distress of Wentzel's marriage dissolution and child custody proceedings; and (4) Wentzel's "reasonable cooperation" with the director.

With respect to the mitigating factors found by the referee, the director argues that the only mitigating factor sufficient to avoid disbarment for misappropriation is clear and convincing evidence showing that the attorney did not intentionally convert the funds. We recently rejected this argument. *See Rooney*, 709 N.W.2d at 270–71 ("[W]e are free to consider mitigating circumstances in cases involving intentional misappropriation of client funds and * * * in certain cases such mitigating factors may result in a sanction less severe than disbarment."). On balance, we conclude that the mitigating factors do not outweigh the aggravating factors found by the referee.

We conclude that the appropriate discipline in this case is outright disbarment. Therefore, we order that Willard L. Wentzel, Jr., be, and hereby is, disbarred.

ANDERSON, G. BARRY, J., took no part in the consideration or decision of this case.