In re Petition for DISCIPLINARY AC-TION AGAINST Harvey N. JONES, a Minnesota Attorney, Registration No. 52498.

No. A11–1715.

Supreme Court of Minnesota.

July 31, 2013.

Martin A. Cole, Director, Kevin T. Slator, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, MN, for petitioner.

Harry A. Sieben, Jr., Michael M. Miller, Marcia K. Miller, Sieben, Grose, Von Holtum & Carey, Ltd., Minneapolis, MN, for respondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed three petitions for disciplinary action against respondent Harvey N. Jones alleging numerous violations of the Minnesota Rules of Professional Conduct. The petitions alleged that Jones misappropriated client and non-client funds, failed to keep trust account records, and failed to cooperate with a disciplinary investigation. After an evidentiary hearing, the referee we appointed found that Jones had committed the professional misconduct alleged in the petition and recommended that Jones be disbarred. We hold that Jones' misconduct warrants disbarment.

Respondent Harvey Jones was admitted to practice law in Minnesota in 1974. He practiced first with an attorney in Hastings and then as part of a law firm in Hastings for 21 years. In 2002 or 2003, Jones left the law firm to open a solo practice in Hastings. After he left the law firm, Jones' income decreased significantly. Jones, however, did not immediately adjust his standard of living to his new income.

The Director served Jones with a petition for disciplinary action on September

16, 2011, alleging misappropriation of funds from clients—two couples he represented and their neighbor—and noncooperation with the disciplinary investigation of the couple's complaint. After the time for filing an answer had expired, *see* Rule 13(a), Rules on Lawyers Professional Responsibility (RLPR), Jones petitioned for the matter to be remanded to the Office of Lawyers Professional Responsibility so he could file an answer and have a hearing. Jones claimed that his depression prevented him from replying in a timely manner. On December 30, 2011, we granted Jones an extension of time to file his answer. Jones filed an answer, and we referred the matter to a referee. The Director filed two supplementary petitions for disciplinary action, alleging Jones misappropriated funds belonging to four other clients and a non-client and failed to keep trust account books and records.

Jones admitted virtually all of the allegations contained in the original and two supplemental petitions, including misappropriation of client and non-client funds, failure to cooperate with the investigation, and failure to keep trust account records. Jones did not contest the Director's accounting of his trust account. The hearing before the referee focused primarily on the presence of mitigating factors.

In total, Jones misappropriated funds over a 20–month period between August 2009 and April 2011 and the dollar amount was between \$51,142.03 and \$73,000.[1] Jones misappropriated funds belonging to seven different clients. One of these clients, N.P., with the assistance of his father, retained Jones to represent him in a personal injury claim arising from an automobile accident in which N.P. sustained a traumatic brain injury. Jones misappropriated approximately \$16,500 of N.P.'s funds between February 17, 2011, and April 21, 2011, and in March 2011, Jones also issued a check for \$7,379 drawn on N.P.'s funds, to another client. In addition to his clients, Jones misappropriated funds that he had been given by the ex-wife of a client he had represented in a divorce proceeding.

Regarding his misappropriation, Jones testified that he was "remorseful from the minute [he] misappropriated the first check" in August 2009 but he continued to misappropriate client funds more than 20 times over the next 20 months. Jones repaid one client in May 2010 using funds misappropriated from another client. Jones did not begin repayment of any other client until March 2011, after he was notified of the Director's initial investigation on February 11, 2011. He did not complete repayment of all misappropriated funds until August 2012, approximately 1 week before his disciplinary hearing. Jones also used funds from one client to repay another client on two other occasions.

In addition to claiming remorse as mitigation, Jones contended that he suffered from depression as mitigation for his misconduct. At the hearing, Jones offered evidence in mitigation and in support of his good character. Jones claims he began experiencing symptoms of depression

---

**1.** The extent of Jones' misappropriation was disputed. The Director contended that Jones misappropriated funds on 25 occasions in a total amount of approximately \$73,000, while Jones contended that the Director's accounting methodology was flawed. The referee did not resolve this dispute between the parties because even under Jones' approach, Jones misappropriated over \$50,000 in client funds on at least 20 occasions over a period of 20 months. The parties agree that Jones misappropriated at least \$51,142.03 on at least 20 occasions over a period of 20 months, and we use these numbers to determine the appropriate sanction.

"[s]omewhere in the 2000s" but did not bring these symptoms to the attention of his primary care physician until November 14, 2011, after he received notice of the initial complaint to the Director. Jones reported he was "extremely anxious," had a sense of "hopelessness," and was "[e]xtremely unable to deal with what would be the realities of life." While Jones was suffering from depression, he continued to function as a lawyer by maintaining a law office, employing a non-lawyer assistant, making regular court appearances, and filing appeals. Jones' primary care physician administered a PHQ–9 screening test for depression that indicated that Jones was on the border between mild and moderate major depression. As a result, Jones' physician prescribed an antidepressant and referred Jones to a licensed clinical social worker for counseling. Currently, Jones is complying with his physician's advice and "can function well."

Jones' physician testified that Jones' "depression would affect his ability to think through problems and problem solve. His decision making would have been affected by his depression." Additionally, Jones' physician testified that depression can "affect cognitive ability. People just cannot think as clearly or as sharply . . . when they are depressed." Jones' physician testified that Jones' depression was a direct cause of Jones' professional misconduct and existed prior to his diagnosis in November 2011. Jones' physician acknowledged, however, that depression did not alter Jones' moral compass, did not impair Jones' ability to distinguish right from wrong, and would not have made him think taking money from clients was acceptable.

Jones' psychologist testified that he first saw Jones approximately 10 years ago, after Jones left the law firm. There was then a break in his treatment of Jones until a few months before the hearing in this case. Jones' psychologist testified that Jones came to him because of the disciplinary investigation. When he began seeing Jones a few months before the hearing, he administered the Minnesota Multiphasic Personality Inventory (MMPI–2) and diagnosed Jones with "a combination of depression and anxiety." The MMPI–2 classified Jones' depression as moderate. Additionally, he administered the Beck's Depression Inventory–II assessment, which indicated that Jones' depression was on the low end of moderate.

Jones' psychologist testified that he believed Jones' depression began with "the issues related to his wife's illness and subsequent death" and the "untimely demise of his longstanding relationship with the law firm that he was with for many years." He further testified: "I think the depression played a role with [Jones] that said I can [misappropriate funds] and it's not as big a deal as some people make it out to be. . . ." Jones' psychologist stated that Jones is remorseful and unlikely to repeat his misconduct. Finally, he acknowledged that there was nothing in Jones' depression that caused Jones to steal client funds and that depression does not typically cause impulse control problems or cognitive impairment except in the most severe cases.

Jones also presented the testimony of witnesses regarding his character and professional reputation as mitigation evidence. A retired Minnesota district court judge testified that he has had a professional relationship with Jones for the last 30 to 40 years and that Jones was "always professional and honest" and "was a decent lawyer, the kind of man that you were pleased to say was a lawyer." When asked if he was aware of Jones' depression, the retired judge stated that "[n]o

one came up and said he is depressed. But I intuitively knew that he was." The retired judge also indicated that prior to the current trust account system, Jones' behavior would not have been seen as outrageous because lawyers used to "float[ ] themselves loans" from their client accounts.

Additionally, two sitting Minnesota district court judges testified that Jones is "a true professional in the legal community," is "well respected as a good lawyer," and is "straightforward, his word was good." Neither judge had noticed nor was aware of Jones' depression.

Three of Jones' clients from whom he did not misappropriate funds also testified. D.H., whose disabled mother was a client of Jones, testified that her mother has owed Jones approximately $12,000 since 2008 or 2010 for his work on a foreclosure matter. D.H. testified that Jones did not badger her mother about the fee, was "ethical and professional and knew what he was doing," went "above and beyond," and that she was happy with the legal work he had provided. P.W. testified that Jones represented her on a theft by swindle charge and negotiated a plea bargain for her. P.W. stated that Jones is "a very

ethical, moral man." Finally, M.R., one of Jones' current clients, testified that Jones seemed to be on top of what was going on in her case. None of these clients changed their opinions of Jones after learning that he had misappropriated client funds.

The referee made findings of fact regarding Jones' misappropriation that are consistent with Jones' admissions, the audit of Jones' trust account by the Director, and Jones' testimony. The Referee concluded that by misappropriating client funds, Jones violated Minn. R. Prof. Conduct 1.15(a), (c)(3) and (c)(4),[2] and 8.4(c).[3] Additionally, the referee concluded that Jones violated Rule 25, RLPR[4] and Minn. R. Prof. Conduct 8.1(b)[5] by repeatedly failing to respond to requests for meetings and documentation by the Director during the investigation and by failing to file a timely answer to the charges of unprofessional conduct in accordance with Rule 9(a)(1), RLPR.[6] Finally, the referee found that Jones failed to maintain trust account records in violation of Minn. R. Prof. Conduct 1.15 and Appendix 1 thereto by specifically failing to "maintain subsidiary client ledgers and monthly trial balances" and failing "to perform monthly trust account reconciliation."

---

2. A lawyer must deposit "funds of clients or third persons held by a lawyer or law firm in connection with a representation ... in one or more identifiable trust accounts," "maintain complete records of all funds ... of a client or third person coming into the possession of the lawyer," and "promptly pay or deliver to the client or third person as requested the funds ... in the possession of the lawyer which the client or third person is entitled to receive." Minn. R. Prof. Conduct 1.15(a), (c)(3), and (c)(4).

3. "It is professional misconduct for a lawyer to: ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Minn. R. Prof. Conduct 8.4(c).

4. "[A]ny lawyer who is the subject of an investigation or proceeding under these Rules"

must cooperate "by complying with reasonable requests, including requests to: (1) Furnish designated papers, documents or tangible objects; (2) Furnish in writing a full and complete explanation covering the matter under consideration; (3) Appear for conferences and hearings at the times and places designated...." Rule 25, RLPR.

5. A lawyer, in connection with a disciplinary matter, must not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority." Minn. R. Prof. Conduct 8.1(b).

6. A lawyer is required to "submit an answer" to disciplinary charges "[w]ithin 14 days after the lawyer is notified of the [c]harges." Rule 9(a)(1), RLPR.

■ With respect to mitigating factors, the Referee found that Jones showed "by clear and convincing evidence that he suffers from a psychological problem (depression or depression and anxiety), that he has sought treatment for that problem, that the treatment has stopped the misconduct, and that the misconduct is unlikely to occur." The Referee, however, also found that because Jones' depression was moderate, he "did not show . . . that [his] depression and anxiety constituted a 'severe' psychological problem" and that the testimony of Jones' physician and psychologist was not clear and convincing that Jones' illness was the cause of his misconduct. The Referee therefore concluded that Jones did not satisfy all of the *Weyhrich* factors and that his depression was not a mitigating factor for his misappropriation of client funds.[7] But while Jones did not present sufficient evidence to satisfy all of the *Weyhrich* factors, the referee found that his depression was a mitigating factor for his passive misconduct of failing to keep trust account records and failing to cooperate with the investigation.

Regarding other mitigating factors, the referee found that Jones produced "persuasive evidence . . . of his good character, professionalism, and reputation for competence, honesty and probity as an attorney" and, until the misconduct, "had led an exemplary professional life." Further, the referee found that Jones had expressed remorse. The referee, however, found that Jones' full restitution was not a mitigating factor because "it was compelled and not made until after [Jones] was under

investigation." The referee also found that Jones' lack of prior discipline was not a mitigating factor.

The referee found aggravating factors including that Jones failed to cooperate with the disciplinary proceedings for 10 months and engaged in a pattern of misappropriation over a number of months. The referee found that the vulnerability of N.P. due to his traumatic brain injury was also an aggravating factor. The referee recommended that Jones be disbarred.

I.

■ Because Jones ordered a transcript of the hearing, the referee's findings of fact and conclusions of law are not conclusive. Rule 14(e), RLPR; *In re Lyons*, 780 N.W.2d 629, 635 (Minn.2010). In disciplinary cases, we review a referee's findings and conclusions under the clearly erroneous standard and will reverse only when the findings and conclusions are without evidentiary support in the record. *In re Pyles*, 421 N.W.2d 321, 325 (Minn. 1988). We find it particularly appropriate to defer to the referee "when the referee's findings rest on disputed testimony or in part on credibility, demeanor, and sincerity." *Lyons*, 780 N.W.2d at 635.

While Jones ordered a transcript, he does not challenge the referee's conclusions that he committed professional misconduct by misappropriating $51,142.03 from seven clients and a non-client over a 20–month period, failing to maintain required trust account books and records, and failing to cooperate with the Director.

---

7. In *In re Weyhrich*, we identified five factors for consideration when a "respondent attorney raises psychological disability as a mitigating factor." *In re Weyhrich*, 339 N.W.2d 274, 279 (Minn.1983). We require the attorney to "prove that he indeed has a severe psychological problem" and "that the psychological problem was the cause of the miscon-

duct." *Id.* Further, the attorney must show that "he is undergoing treatment and is making progress to recover from the psychological problem which caused or contributed to the misconduct, that the recovery has arrested the misconduct, and that the misconduct is not apt to recur." *Id.*

Jones, however, challenges the referee's conclusions with respect to several mitigating factors, and he also argues that he should be suspended and not disbarred. We first address Jones' arguments with respect to mitigating factors and then address the appropriate discipline to impose.

### A.

Jones contends that the referee erred in concluding that Jones did not satisfy all of the *Weyhrich* factors as required for mitigation of intentional misconduct based on a psychological problem. Specifically, Jones argues that the referee's findings are unsupported by the record because the Director did not present expert rebuttal testimony on the severity and causal effect of Jones' depression. The Director contends that the referee did not err because the evidence Jones presented at the hearing showed that his depression was moderate at most. Additionally, the Director argues that the referee correctly determined that Jones' depression was not the direct cause of his misconduct based on the testimony of Jones' physician and psychologist.

■ When an "attorney raises psychological disability as a mitigating factor," we require the attorney to "prove that he indeed has a severe psychological problem, that the psychological problem was the cause of the misconduct, that he is undergoing treatment and is making progress to recover, ... that the recovery has arrested the misconduct, and that the misconduct is not apt to reoccur." *Weyhrich*, 339 N.W.2d at 279; *see also In re Mayne*, 783 N.W.2d 153, 158 (Minn.2010). When the misconduct is "unintentional or passive," such as "failure to cooperate with an investigation," we have recognized "individual *Weyhrich* factors as independent mitigating factors." *In re Farley*, 771 N.W.2d 857, 864 (Minn.2009). The respondent attorney bears the burden of establishing the *Weyhrich* "criteria by clear and convincing evidence." *Weyhrich*, 339 N.W.2d at 279; *accord Farley*, 771 N.W.2d at 861–62.

■ The first two factors—the severity of Jones' psychological problems and the causal relationship between Jones' psychological problems and his misconduct—are the only *Weyhrich* factors at issue in this case.[8] Regarding the first factor, "we have distinguished between 'serious' and 'severe' conditions," finding that "only severe conditions are a mitigating factor in an attorney disciplinary proceeding." *In re Albrecht*, 779 N.W.2d 530, 536 (Minn. 2010) (holding that Albrecht's "disorder was serious, but not severe," based on his therapist's testimony that his disorder was " 'moderate' in severity"); *see also In re Hanvik*, 609 N.W.2d 235, 240 (Minn.2000) (holding that because Hanvik's psychologist characterized his depression as serious, Hanvik did not have a severe disorder). One way an attorney may prove severity is to present "evidence that he suffered from a severe psychological disorder on a recognized psychological diagnostic scale." *Farley*, 771 N.W.2d at 862; *see also Hanvik*, 609 N.W.2d at 240 (holding that Hanvik did not have a severe psychological disorder when his depression was classified as moderate on a diagnostic scale).

■ At the hearing, Jones' treating physician and psychologist testified regarding Jones' depression. Jones' physician stated that Jones' depression was on the border between mild and moderate according to the PHQ–9 screening test.

---

8. The Director does not contest the referee's findings on the third, fourth, and fifth *Weyhrich* factors or the referee's conclusion that Jones' depression mitigated his passive misconduct.

Jones' psychologist testified that the Beck's Depression Inventory–II assessment also indicated that Jones' depression was on the low end of moderate. While Jones' psychologist indicated in his written evaluation that Jones "suffers from severe depression," he testified at the hearing that classification of depression is subjective. Finally, Jones himself testified that his depression did not prevent him from maintaining a law office, employing a non-lawyer assistant, making regular court appearances, and filing appeals. Based on this record, the referee did not clearly err in concluding that Jones failed to prove that he had a severe psychological disorder.

The second *Weyhrich* factor at issue is whether Jones' depression caused his misconduct. Our precedent indicates that "[t]o fulfill the causation requirement under *Weyhrich,* an attorney's severe psychological disorder must directly cause the misconduct." *In re Fairbairn,* 802 N.W.2d 734, 744 (Minn.2011); *see also Mayne,* 783 N.W.2d at 160 ("[I]ndirect causation is not enough to justify a finding of causation under *Weyhrich.*"). Depression does not cause an attorney's affirmative act of misappropriation if the attorney "possessed enough cognitive ability to understand that he needed to restore the funds that he repeatedly withdrew from the client trust account" and engaged in "active manipulation of various accounts." *In re Jellinger,* 655 N.W.2d 312, 315 (Minn.2002). Moreover, financial pressure faced by a lawyer's firm supports the reasonable inference that concerns for the attorney's well-being, not depression, are the cause of the misappropriation. *See Fairbairn,* 802 N.W.2d at 744.

■ At the hearing, Jones' physician testified that Jones' depression did not impair his ability to distinguish right from wrong, alter his moral compass, or cause

him to think that taking money from his clients was proper. Additionally, Jones' psychologist testified that nothing about Jones' depression caused cognitive impairment or impulse control problems. Like in *Jellinger,* the record reflects that Jones possessed the cognitive ability to know that he needed to repay his clients and not to shift money from one client to another in order to make restitution. And, as in *Fairbairn,* the record indicates that Jones was facing financial pressure as a result of the decline in his income after opening his solo practice. Finally, Jones' psychologist testified that Jones' depression did not cause him to steal client funds.

Based on this record, the referee did not clearly err in concluding that Jones failed to prove that his depression caused him to misappropriate client funds. And because Jones did not satisfy all of the *Weyhrich* factors, we hold that the referee did not clearly err by concluding that Jones' depression was not a mitigating factor for his misappropriation.

### B.

Jones also raises the mitigating factors of his good character, expression of remorse, full restitution, and lack of prior discipline. The Referee found that Jones' good character and expression of remorse were mitigating factors, and neither party challenges these findings. But the Referee also found that the fact that Jones made full restitution and Jones' lack of prior discipline were not mitigating factors. Jones challenges these findings.

■ With respect to the Referee's determination that restitution was not a mitigating factor, our precedent considers restitution "a mitigating factor that may result in a sanction less than disbarment. To mitigate, however, the restitution must not be prompted by fear of getting caught." *In re Rooney,* 709 N.W.2d 263,

271 (Minn.2006) (citations omitted); *see also Fairbairn*, 802 N.W.2d at 746 (holding that the referee should consider full restitution occurring before the attorney is notified of a disciplinary investigation as a mitigating factor); *Hanvik*, 609 N.W.2d at 239 (holding the Referee properly found that restitution was not a mitigating factor because Hanvik only made restitution "the day of the hearing" and "after a number of demands and a complaint to the [D]irector"). We also do not consider restitution a mitigating factor when it "was made by misappropriating funds from other clients." *In re Olsen*, 487 N.W.2d 871, 875 (Minn.1992).

■ In the present case, Jones made restitution to one client in May 2010, before he was notified of the Director's investigation but after several of his clients had made multiple demands for their funds. And in order to pay one client prior to being notified of the Director's investigation, Jones misappropriated funds from another client. Jones continued to misappro-

priate funds from some clients as he was making restitution to others because on two other occasions, he misappropriated funds from one client to make restitution to another client. Finally, Jones did not complete restitution to his clients until August 2012, less than one week before his disciplinary hearing. Based on this record, we hold that the referee did not clearly err in concluding that Jones' restitution was not a mitigating factor.

■ With respect to prior discipline, we have repeatedly held that "an attorney's lack of prior disciplinary history is not a mitigating factor, but instead constitutes the absence of an aggravating factor." *Fairbairn*, 802 N.W.2d at 746; *see also In re Rebeau*, 787 N.W.2d 168, 176 (Minn.2010); *In re Aitken*, 787 N.W.2d 152, 162 (Minn.2010). As our recent precedent is clear that compliance with professional rules and standards is expected, the Referee did not clearly err in concluding that Jones' lack of prior discipline was not a mitigating factor.[9]

9. The referee found that Jones failed to cooperate with the Director's investigation in violation of Rule 25, RLPR, and Minn. R. Prof. Conduct 8.1(b). But the referee also lists Jones' "failure to cooperate with the disciplinary proceeding from February 2011 until November 2011" as an aggravating factor. We "caution referees not to rely on the *same* acts of noncooperation to support both a finding of attorney misconduct and the existence of an aggravating factor." *In re O'Brien*, 809 N.W.2d 463, 466 n. 9 (Minn.2012). Unlike *O'Brien*, in which we found that there was additional evidence of bad faith in the form of O'Brien's "failure to comply with the referee's orders" and "frivolous and tardy objections to the stipulated disposition reached by the parties," there is no evidence of bad faith here other than Jones' failure to cooperate with the Director's investigation and reply to the Director's petition, both of which the Referee found were acts of misconduct. *Id.* We conclude, therefore, that the Referee erred in citing Jones' failure to cooperate as an aggravating factor and do not consider it as such.

We acknowledge that prior to *O'Brien*, our caselaw may not have been clear that the same act of noncooperation cannot be considered both an act of misconduct and an aggravating factor. *See, e.g., In re Mayrand*, 723 N.W.2d 261, 267, 269 (Minn.2006) (holding that an attorney's failure to respond to investigation notices, complaints, and other communications was both a violation of Minn. R. Prof. Conduct 8.1(b) and an aggravating factor); *In re Pierce*, 706 N.W.2d 749, 753–54, 757 (Minn.2005) (holding that an attorney's failure to respond to a disciplinary petition or appear for meetings with the Director was both a rule violation and an aggravating factor); *In re Westby*, 639 N.W.2d 358, 369–71 (Minn.2002) (holding that an attorney's failure to respond to a disciplinary notice and interference with the investigation was both a rule violation and an aggravating factor). We now expressly clarify that referees may not "rely on the *same* acts of noncooperation to support both a finding of attorney misconduct and the existence of an aggravating factor." *O'Brien*, 809 N.W.2d at 466 n. 9.

## II.

We next turn to the question of the appropriate discipline. The referee recommended that Jones be disbarred. While we place great weight on the referee's disciplinary recommendation, we bear the final responsibility for determining the appropriate discipline. *In re Schmidt,* 402 N.W.2d 544, 545 (Minn.1987); *see also In re Singer,* 541 N.W.2d 313, 315 (Minn. 1996) (stating that we are "the sole arbiter of the discipline to be imposed").

Jones argues that due to the mitigating factors and his lack of prior discipline, the proper sanction is suspension rather than disbarment. The Director argues that disbarment is the proper sanction because misappropriation of client trust account funds is serious and usually warrants disbarment absent substantial mitigating circumstances that are not present in this case. The Director further argues that Jones' misappropriation is weighty because it took place on numerous occasions over an extended period of time and Jones also committed additional acts of misconduct.

We have long held that "[t]he purpose of disciplinary sanctions for professional misconduct is not to punish the attorney, but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *Albrecht,* 779 N.W.2d at 540 (citation omitted) (internal quotation marks omitted). As a result, "[w]e consider four factors when determining the appropriate discipline: '1) the nature of the misconduct, 2) the cumulative weight of the violations of the rules of professional conduct, 3) the harm to the public, and 4) the harm to the legal profession.'" *Fairbairn,* 802 N.W.2d at 742 (quoting *Albrecht,* 779 N.W.2d at 540).

When determining appropriate discipline, "[c]oncepts of fairness dictate that consistency in the imposition of sanctions be an important goal," but we also recognize that each case has "its own unique factual circumstances." *Pyles,* 421 N.W.2d at 325. Additionally, "[e]ven where no single act of misconduct standing alone warrants severe public discipline, the cumulative weight and severity of multiple disciplinary rule violations may compel such discipline." *In re Geiger,* 621 N.W.2d 16, 23 (Minn.2001).

The nature of Jones' misconduct is misappropriation of client and non-client funds, failure to keep trust account records, and failure to cooperate with a disciplinary investigation. The presumptive punishment for misappropriation of client funds is disbarment. *In re Wentzel,* 711 N.W.2d 516, 520 (Minn.2006); *see also In re Vaught,* 693 N.W.2d 886, 891 (Minn. 2005) (disbarring an attorney who misappropriated nearly $50,000 in client funds); *In re Stroble,* 487 N.W.2d 869, 871 (Minn. 1992) (disbarring an attorney who misappropriated $90,000 from elderly clients). We also consider trust account violations, including "[t]he failure to maintain proper books and records," *In re Varriano,* 755 N.W.2d 282, 291 (Minn.2008), and the failure to cooperate with disciplinary authorities to be serious disciplinary matters, *In re De Rycke,* 707 N.W.2d 370, 375 (Minn. 2006).

With respect to the cumulative weight of the violations, "we distinguish a brief lapse in judgment or a single, isolated incident of misappropriation from multiple instances of misappropriation occurring over a substantial amount of time or involving significant amounts of money." *Fairbairn,* 802 N.W.2d at 743 (internal quotation marks omitted) (holding that "six acts of intentional misappropriation totaling $144,000 and two acts of uninten-

tional misappropriation over the course of nearly thirteen months ... constitute more than a brief lapse in judgment or a single isolated incident" (internal quotation marks omitted)); *Rooney,* 709 N.W.2d at 269 (stating that 17 separate instances of misappropriation totaling $27,700 over a year did not constitute "a single, isolated incident or a brief lapse in judgment").

■■■ In addition to evaluating the four factors discussed above, we "consider[ ] both aggravating and mitigating circumstances" to determine the appropriate sanction. *Rooney,* 709 N.W.2d at 268. The mitigating factors present here are Jones' good character and expression of remorse. Jones' depression is also a mitigating factor for his passive misconduct in failing to keep trust account records and failing to cooperate with the Director's investigation. Additionally, the Referee found that Jones' pattern of misappropriation over an extended period of time and N.P.'s vulnerability are aggravating factors, and the parties do not contest these findings.

Although there are some mitigating factors present here, "in misappropriation cases involving substantial amounts of money, a large number of affected clients, or numerous misappropriations over a long period of time, mitigating circumstances often will not permit the attorney to avoid disbarment." *Id.* at 272. And "when the misconduct includes other ethical violations in addition to the misappropriation ... mitigating factors usually will not militate against disbarment." *Id.*

■■■ After considering the four factors and evaluating aggravating and mitigating circumstances, we "look to similar cases for guidance in setting the proper sanction" because we "strive for consistency in attorney discipline." *Id.* at 268. In cases sharing similar facts with this case—misappropriation from several clients of a sig-

nificant sum of money on multiple occasions over an extended period of time with some mitigating circumstances—we have imposed the penalty of disbarment. In *In re Stroble,* we disbarred an attorney who over the course of approximately 2 years "stole $90,000 from three elderly, vulnerable clients who entrusted [the attorney] with their life savings." 487 N.W.2d at 871. We found that the mitigating factors of full disclosure of misconduct and cooperation with the disciplinary proceedings, expression of remorse, and pro bono work were not sufficient to avoid disbarment due to the seriousness of the misconduct. *Id.* In *In re Wentzel,* we disbarred an attorney who misappropriated client funds on 30 separate instances over more than 2 years totaling approximately $88,000 and refused to acknowledge the full moral and ethical problems with his acts. 711 N.W.2d at 522. We found that restitution, lack of financial harm to clients, cooperation, and anxiety and emotional distress were not sufficient to avoid disbarment. *Id.*

Jones relies on cases in which we imposed discipline other than disbarment on attorneys who misappropriated client funds. In particular, Jones argues that we should follow the precedent set in our recent cases of *In re Stockman,* 811 N.W.2d 584 (Minn.2012) and *In re Hobbs,* 813 N.W.2d 813 (Minn.2012), in which we suspended attorneys who misappropriated client funds rather than disbarring them. The misconduct in these cases, however, was less egregious than Jones' misconduct. In *Stockman,* the attorney misappropriated funds negligently through mishandling, commingling, and failing to maintain record books, not by intentional transfers like those made by Jones. 811 N.W.2d at 585. In *Hobbs,* which involved a stipulation for discipline, the attorney misappropriated $1,600 in client funds and $1,000 in non-

client funds, amounts that are far less than the minimum of $51,142.03 misappropriated by Jones. *In re Hobbs*, 813 N.W.2d 813, 813–14 (Minn.2011).

In other cases cited by Jones, the amount misappropriated was substantially less than the amount involved here, the misappropriation happened on only a few occasions, or there were substantial mitigating factors.[10] In *Hanvik*, we indefinitely suspended an attorney who misappropriated less than $5,000 in client funds, failed to keep trust account records, and made misrepresentations to the Director, clients, and Medicare. *See* 609 N.W.2d at 241. Jones also cites *In re Pyles*, in which we suspended an attorney but did not disbar him. 421 N.W.2d at 327. We suspended the attorney, rather than disbarring him, because, although the attorney engaged in misconduct including misappropriation of client funds and the failure to keep adequate trust account records, the attorney did extensive and exemplary pro bono work, knew what he was doing was wrong but believed it was morally permissible to aid the less fortunate, and was no longer engaged in the general practice of law. *Id.* at 323–24, 326–27. *Pyles* involved facts much different from those in this record.

Based on our analysis of the substantial amount of money misappropriated, the multiple instances of misappropriation over a 20–month period, the delay in making restitution, the harm caused to multiple clients, and the vulnerability of Jones' client N.P., we conclude that disbarment is the appropriate discipline in this case. We therefore order that Jones be disbarred.

We order that:

1. Respondent Harvey N. Jones is disbarred in the State of Minnesota, effective upon the date of the filing of this opinion;

2. Jones shall comply with Rule 26, RLPR (requiring notice to clients, opposing counsel, and tribunals); and

3. Jones shall pay to the Director the sum of $900 in costs and disbursements pursuant to Rule 24, RLPR.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

**10.** In two of the cases that Jones cites, *In re Farley* and *In re Albrecht*, the attorneys in question were suspended after engaging in criminal solicitation of a minor, *see Farley*, 771 N.W.2d at 859–60 and for incompetence, lack of diligence, writing a nonnegotiable check, and failure to communicate with a client, *see Albrecht*, 779 N.W.2d at 532–33. These acts are an entirely different type of misconduct from the misconduct at issue here, and therefore, these cases are inapplicable in determining the appropriate discipline.