STATE OF MINNESOTA

IN SUPREME COURT

A13-1856

Original Jurisdiction                                                          Per Curiam

In re Petition for Disciplinary Action                          Filed: October 8, 2014
Against A.B., a Minnesota Attorney,                     Office of Appellate Courts
Panel Case No. 35121

_____

Martin A. Cole, Director, Kevin Slator, Senior Assistant Director, Office of Lawyers
Professional Responsibility, Saint Paul, Minnesota, for respondent.

James C. Whelpley, James Whelpley & Associates, Chartered, Roseville, Minnesota for
appellant.

_____

S Y L L A B U S

A panel of the Lawyers Professional Responsibility Board clearly erred when it

concluded that the appellant had violated Minn. R. Prof. Conduct 8.4(d).

Reversed and admonition vacated.

Considered and decided by the court without oral argument.

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility issued an

admonition to A.B. based on his failure to appear at several court hearings in a marital-

dissolution case and because he did not inform the district court that he had a limited-

scope agreement with his client that excluded court hearings. A panel of the Lawyers Professional Responsibility Board affirmed the admonition, concluding that A.B.'s conduct violated Minn. R. Prof. Conduct 8.4(d). Because the panel's decision was clearly erroneous, we reverse the Board's decision and vacate the admonition.

## I.

A.B. has practiced in the areas of family and bankruptcy law since 1975. In 2011, A.L. retained A.B. to represent her in a cooperative divorce from her husband. The fee agreement required A.B. to prepare certain paperwork and to represent A.L. at one uncontested divorce hearing, in exchange for a flat fee. The fee agreement also provided that, "[i]f the Court require[d] hearings beyond the first default hearing" or the matter involved additional paperwork, A.B. would represent A.L. on an hourly fee basis.

After A.B. filed the initial divorce papers, an associate in A.B's office attended the hearing scheduled by the district court. At the hearing, the district court agreed to approve the marital dissolution, but reserved decision on issues related to child support and custody. At that time, the court scheduled another hearing to address the issues that it had reserved.

Approximately three weeks later, the district court entered the divorce decree. In addition to addressing the issues related to the marital dissolution, the decree provided that "[A.B.] shall cease to be attorney of record . . . 61 days after [its] entry." Based on the decree, A.B. ceased to be the attorney of record as of September 11, 2011.

The district court held a review hearing on November 2, 2011, nearly 2 months after it had discharged A.B. as A.L.'s attorney of record. The day before the hearing,

2

A.L. told A.B. that she would attend the hearing by herself. After noting that A.B. had represented her at an earlier hearing, the district court asked A.L. at the hearing whether A.B. was "representing [her] any more in this matter?" A.L. responded "[n]o," and the district court acknowledged that, as of 61 days after entry of the divorce decree, A.B. no longer represented A.L. in the proceedings.

After discussing A.B.'s absence with A.L., the district court explained to the parties that they would need to prepare an amended divorce decree. When A.L.'s former husband suggested that the parties could work with A.B. or his associate to prepare an amended decree, the court said, "I don't care who does it as long as it's done." The court also indicated that, if the proposed amended decree addressed all of the issues satisfactorily, it could "sign off on [the decree] without having [the parties] come back."

After the hearing, A.L. asked A.B. to prepare an amended divorce decree in accordance with the district court's instructions. A.B. agreed to do so, and over the next several months, A.B. worked with A.L. and her former husband to revise the decree.

During the winter of 2012, two hearings were scheduled and then rescheduled at A.L.'s request. The district court scheduled one hearing for January 17, but A.L. instructed A.B. not to attend. The day before the hearing, A.L. asked the district court to reschedule the hearing due to a work conflict. The district court agreed to reschedule the hearing for February 23, and A.L. did not ask A.B. to attend the rescheduled hearing. On the morning of the hearing, A.L. left several telephone messages for the court saying that she could not attend the hearing because she was ill. The district court continued the hearing until April 25, 2012.

Approximately three weeks before the April 25 hearing, A.L. told A.B. that she would be unable to attend the hearing and that she would contact the district court to reschedule it. As the hearing date approached, A.B. realized that A.L. had failed to reschedule the hearing. Accordingly, A.B. e-mailed the district court two days before the hearing to request that it be rescheduled. A.B. later admitted that he "implicitly returned to attorney of record status on April 23, 2012" because of the e-mail that he had sent to the district court that day.

A hearing took place approximately two months later, on June 20, but only A.L.'s former husband attended. A.B. did not appear at the hearing because A.L. had again instructed him not to do so. A.L. failed to appear because she had become ill the night before and was too sick to leave the house the next morning. When neither A.L. nor A.B. appeared at the hearing, the district court contacted A.B. and requested an explanation. A.B. said that he had not planned to attend the hearing because A.L. had asked him not to do so and that he did not know why A.L. had not attended. A.B. unsuccessfully attempted to locate A.L. that morning and offered to come to court anyway, but the district court declined the offer.

After A.B. did not appear at the June 20 hearing, the judge filed a complaint with the Office of Lawyers Professional Responsibility. Following an investigation, the district ethics committee recommended that no discipline be imposed on A.B. The Director rejected the committee's recommendation and issued an admonition based on Minn. R. Prof. Conduct 8.4(d). *See* Rule 8(d)(2), Rules on Lawyers Professional Responsibility (RLPR) (authorizing the Director to issue an admonition when "a lawyer's

4

conduct was unprofessional but of an isolated and non-serious nature"). The Director concluded that A.B. violated Rule 8.4(d) by "not inform[ing]" the district court "of his limited scope legal representation"[1] and "wast[ing] the court's time" by "not appear[ing] on four consecutive occasions."

A.B. challenged the admonition and requested "that the Director present the charges to a panel [to] consider the matter *de novo*." *See* Rule 8(d)(2)(iii), RLPR. After the panel heard the matter, *see* Rule 9(i), (j)(2), RLPR, it affirmed the admonition, concluding that the findings made by the Director "were proven by clear and convincing evidence." A.B. then appealed to this court. *See* Rule 9(m), RLPR.

## II.

The question presented in this case is whether A.B. "engage[d] in conduct that is prejudicial to the administration of justice," Minn. R. Prof. Conduct 8.4(d), during his representation of A.L. A panel may admonish an attorney if it "concludes that the attorney engaged in conduct that was unprofessional but of an isolated and nonserious nature." Rule 9(j)(1)(iii), RLPR. We review the findings made by a panel for clear error, *In re Panel Case No. 23236*, 728 N.W.2d 254, 257-58 (Minn. 2007), but we have "the

---

[1]  A "limited scope legal representation" occurs when an attorney provides only certain, designated services to a client, rather than the full scope of legal services that an attorney would ordinarily provide to a client. *See* Modest Means Task Force, Am. Bar Ass'n, *Handbook on Limited Scope Legal Assistance* 4 (2003). An attorney is permitted to "limit the scope of the representation" of a client "if the limitation is reasonable under the circumstances and the client gives informed consent." Minn. R. Prof. Conduct 1.2(c). The Director makes no argument either that A.L. failed to consent to the limited scope of A.B.'s legal representation or that it was unreasonable for the parties to agree that A.B. would not appear at any court hearings after the first one.

final responsibility for determining appropriate discipline for violations of the rules of professional conduct," *id.* at 258 (citing *In re Panel File No. 99-5*, 607 N.W.2d 429, 431 (Minn. 2000)).

A.B. argues that we should reverse the panel's finding that he failed to appear "on four consecutive occasions" in the marital-dissolution proceeding. He further argues that he was under no obligation to inform the court that his representation of A.L. was limited in scope. The Director responds that A.B. violated Minn. R. Prof. Conduct 8.4(d) when he "fail[ed] to communicate to the court . . . that his representation agreement with [A.L.] excluded court appearances" and then was absent from "court appearances without notice or an explanation to the court." The Director argues that A.B.'s conduct was prejudicial to the administration of justice because it wasted the court's time and required the court to reschedule several hearings.

The panel affirmed the director's admonition based on its conclusion that A.B. had failed to attend "four consecutive hearings" while representing A.L. in a marital-dissolution proceeding. There is insufficient support in the record to support the panel's finding that A.B. failed to attend the four hearings. On four of the five hearing dates that were scheduled by the district court, the hearings were rescheduled, and thus never occurred, because A.L. could not attend, either based on a work conflict or an illness, not because A.B. failed to appear. On three of those dates, A.B. was no longer the attorney of record, so absent a court order, the district court could not reasonably have expected A.B. to appear at any of those hearings, even if they had occurred.

6

At most, the record establishes that A.B. failed to attend only a single hearing: the one that occurred on June 20. As to each of the other hearings, the district court rescheduled them, or A.B. was not required to appear because he was no longer counsel of record. Because there were not "four consecutive hearings" at which A.B. failed to appear, we conclude that the panel's determination that A.B. violated Minn. R. Prof. Conduct 8.4(d) rested on a clearly erroneous factual finding. *See In re Jones*, 834 N.W.2d 671, 677 (Minn. 2013) (stating that a factual finding is clearly erroneous if it does not find support in the record). Based on the unique facts of this case, we further conclude that the panel erred when it determined that A.B.'s failure to attend the June 20 hearing violated Minn. R. Prof. Conduct 8.4(d).[2] A.L. instructed A.B. not to attend the hearing pursuant to the terms of a limited-scope legal representation, the propriety of which the Director does not challenge. A.B. reasonably believed that A.L. would attend the hearing, at which point she could inform the court that she had instructed A.B. not to

---

[2] By vacating the admonition, we do not mean to suggest that an attorney's failure to attend a court hearing can never result in discipline. To the contrary, as noted in our cases, we have disciplined attorneys for failing to attend court hearings. *See In re Moore*, 692 N.W.2d 446, 448-49 (Minn. 2005) (publicly reprimanding an attorney for failing to attend a court hearing, neglecting to inform the court that she would not be attending the hearing, and not advising her client that he needed to appear at the hearing); *In re Coleman*, 679 N.W.2d 330, 331 (Minn. 2004) (order) (publicly reprimanding an attorney for, among other things, leaving a courtroom while trial was in session, failing to appear in court on time, and being absent at a hearing); *In re Flodine*, 675 N.W.2d 627, 627 (Minn. 2004) (order) (suspending an attorney for, among other things, failing to make court appearances). On this record, however, when the admonition rests on a clearly erroneous factual finding and the district court had discharged the attorney in the divorce decree, there is insufficient evidence to conclude that the attorney's conduct was prejudicial to the administration of justice.

attend.   Under these circumstances, we vacate the admonition because A.B.'s conduct was neither prejudicial to the administration of justice nor warranted discipline.

Reversed and admonition vacated.