**In re PANEL FILE NUMBER 99–5.**

No. C5–99–1464.

Supreme Court of Minnesota.

March 2, 2000.

Rehearing Denied April 3, 2000.

Alfred Milton Stanbury, Minneapolis, for appellant.

Timothy Michael Burke, Senior Asst. Director, Edward J. Cleary, Director, Office of Lawyers Professional Responsibility, St. Paul, for respondent.

## OPINION

PER CURIAM.

Respondent, identified as Panel File No. 99–5, represented Bio–Recovery Inc. (client) in a breach of contract action. In anticipation of a scheduling and settlement conference, his client advised respondent that it wished to reach a settlement at the conference and included proposed settlement terms. Respondent did not communicate the settlement offer to the magistrate or opposing counsel at the conference. Five months later the lawsuit settled, a dispute over respondent's fees ensued and his client filed a complaint with the Lawyers Professional

Responsibility Board (LPRB) alleging that respondent failed to communicate the client's settlement proposal to opposing counsel during the conference. In response to the complaint, the Director of the Office of Lawyers Professional Responsibility (Director) submitted a petition to the LPRB alleging that respondent violated Minn. R. Prof. Conduct 1.2(a) relating to the objectives of an attorney's representation. On July 13, 1999, a LPRB Panel issued its findings and a determination that respondent's conduct warranted an admonition.[1] On respondent's appeal we affirm.

The facts are not in dispute. In approximately September 1995, respondent's client retained him to represent it in a breach of contract action in United States District Court and respondent and his client entered into a contingent fee agreement providing that respondent's fee would be equivalent to 33–1/3% of the amount his client recovered in the litigation, less $1,500.00 paid as an advancement of the fee. In anticipation of a scheduling and settlement conference set for April 15, 1996, respondent's client faxed a letter to him on April 11, 1996, informing him that it wanted to settle the case: "[W]e noted that the upcoming meeting on April 15 has been set to discuss settlement if desired. This letter is to officially notify you that we *do* wish to reach a settlement in the upcoming meeting." The letter then outlined his client's terms for settlement.

Respondent wrote the magistrate judge the same day regarding matters related to the pretrial conference but did not mention his client's interest in settlement or the proposal. Instead, and contrary to his client's clearly expressed interest in settlement, he wrote to the magistrate "[u]nder the circumstances, therefore, any discus-

sions in the near term concerning settlement and the production of a joint statement of the case would be premature and inadvisable." On the same day respondent faxed a copy of his letter to his client. During the April 15 conference settlement was not discussed.

Five months later in September of 1996, the lawsuit settled for $10,518.20 and under the contingent fee arrangement respondent was entitled to $2,002.56.[2] Respondent sent a letter to his client on September 21, 1996, stating that because the settlement was against his advice, he was no longer bound by the contingent fee arrangement and billed his client $41,154.60, based upon what he claimed was the hourly value of his work. Respondent's efforts to collect the billed fee claim were unsuccessful in both federal and state courts and respondent ultimately dismissed his claim after the state court advised him that he was likely to lose and would be subject to sanctions. Respondent's client then alleged that respondent failed to communicate their settlement offer.

On January 27, 1999, the Director submitted to the LPRB a petition alleging that respondent had violated Minn. R. Prof. Conduct 1.2(a),[3] which provides in relevant part:

A lawyer shall abide by a client's decisions concerning the objectives of representation * * * and consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.

On July 13, 1999, a LPRB Panel issued its findings. One panel member found a per se violation of Minn. R. Prof. Conduct 1.2(a) and concluded that based on respon-

---

**1.** *See* Rule 9(j), Rules on Lawyers Professional Responsibility (RLPR).

**2.** This amount was one-third of the settlement, $3,502.56 minus the $1,500.00 advancement of the fee previously paid by respondent's client.

**3.** There were two other counts of misconduct alleged against respondent but neither are relevant to this appeal.

dent's disciplinary history, probable cause for public discipline was "manifestly present." Another panel member concluded that because Minn. R. Prof. Conduct 1.2(a) does not specifically address settlement offers proposed *by*, rather than *to*, a client, whether a violation occurs because of the failure to communicate the client's offer depends on the factual context. The panelist also noted that the client could have communicated the offer directly to the opposing party and the five-month delay in presenting the complaint to the Director weighed against a finding of a violation by respondent. The third panelist concluded there was no absolute duty that a lawyer communicate a client's settlement offer but under the broad mandate of Rule 1.2(a) there was an absolute duty to "at a minimum discuss the proposal with the clients; he could not simply ignore it." The third panelist also concluded that since this was an isolated instance unrelated to respondent's previous discipline the appropriate remedy was admonition "given the client's untimely but convenient discovery of its seriousness." Thus the majority of the panel was in agreement that respondent's conduct warranted an admonition because it violated Minn. R. Prof. Conduct 1.2(a).

Respondent's disciplinary history began in 1991 when he received an admonition for twice executing false proofs of service and obtaining subpoenas based on the false proofs. In 1994 he received an admonition for refusing to return a former client's file after withdrawing from representation, insisting that she come to his home office alone to retrieve the file, and asserting a claim for fees against her for work that respondent withheld. In 1997 respondent was publicly reprimanded for refusing to satisfy a judgment against him and was suspended from the practice of law for 30 days for stopping payment on a court filing fee. The same year respondent also received an admonition for an inappropriate verbal exchange with a social services employee during the course of a judicial proceeding and for failing to cooperate with

the Director's investigation of the ensuing complaint.

■■■ In reviewing a challenge to the findings and recommendation of a panel we are guided by the principle that findings will not be set aside unless clearly erroneous, *see In re Ruhland,* 442 N.W.2d 783, 785 (Minn.1989), and that while great weight is given to the recommendations of a panel, final responsibility for determining the appropriate discipline lies with this court alone. *See In re Klein,* 442 N.W.2d 317, 321 (Minn.1989). The purpose of attorney discipline is the protection of the public and deterrence of future misconduct. *See In re Walker,* 461 N.W.2d 219, 222 (Minn.1990); *In re Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983). Sanctions are imposed according to the unique facts of each case and in considering appropriate sanctions for misconduct, we weigh the following factors: (1) the nature of the misconduct, (2) the cumulative weight of the disciplinary violations, (3) the harm to the public, and (4) the harm to the legal profession. *See In re Smith,* 381 N.W.2d 431, 434 (Minn.1986).

■■■ The provision of Rule 1.2(a) relevant to this matter states that "[a] lawyer shall abide by a client's decisions concerning the objectives of representation * * * and shall consult with the client as to the means by which they are to be pursued." Minn. R. Prof. Conduct 1.2(a). The Director argues that respondent's failure to communicate his client's settlement offer violates Rule 1.2(a) because settlement is an objective of representation and Rule 1.2(a) requires that an attorney communicate a settlement offer *from* as well as *to* a client. Respondent disagrees and asserts that because the three panel members expressed diverging views on respondent's behavior, the panel's determination to issue an admonition was clearly erroneous.

While there is merit to the Director's argument that failure to comply with a client's request to pursue settlement may be a violation of an attorney's duty to

"abide by a client's decisions concerning the objectives of representation," we decline to adopt a bright-line rule that under all circumstances Rule 1.2(a) places an absolute duty on an attorney to communicate an offer of settlement from the attorney's client to the opposing party. Such an inflexible rule ignores the often extremely fluid nature of litigation and may put an attorney in the untenable position of communicating an offer that is clearly not in the client's best interest, or risk violating Rule 1.2(a). But where, as here, the client's letter was a clear and unequivocal expression that settlement was the client's objective, respondent should have abided by his client's objective of pursuing the settlement or persuaded his client that his objective was ill advised, and failing to do either, he should have terminated his representation. Simply ignoring his client's expressed objective was not an option.

We hold that the LPRB Panel did not abuse its discretion in concluding that respondent violated Minn. R. Prof. Conduct 1.2(a) in failing to pursue his client's objectives of representation. We affirm that an admonition should issue.[4]

Affirmed.

PAGE, Justice (concurring specially).

I concur in the result reached by the court, but write separately to state that as I read Rule 1.2(a) of the Minnesota Rules of Professional Conduct, Minnesota attorneys have an absolute duty, unless they withdraw from the representation, to communicate to the opposing party all settlement offers as proposed by that attorney's client. If the attorney believes that the settlement as proposed by the client is not in the client's best interest, it is incumbent upon the attorney to discuss the implica-

tions and ramifications of the settlement with the client. If, after that discussion, the client still wants to settle the case as proposed, the rule requires the attorney to either carry out the client's wishes or withdraw.[5]

LANCASTER, Justice (concurring specially).

I join in the special concurrence of Justice Page.

---

4. The Director requests that we hold as a matter of law that when an appellant fails to order a transcript of the hearing before a panel the findings and conclusions are deemed conclusive, as they are in proceedings before a referee. *See* Rule 14(e), RLPR. We do not believe that such a definitive ruling is necessary, as the panel findings and conclusions are reviewed under an abuse of discre-

tion standard and the expense of ordering a transcript in a matter involving an admonition may be excessive.

5. Obviously the attorney has no obligation to carry out a client's wishes if those wishes involve illegal or unethical conduct.