## In re CHARGES OF UNPROFESSIONAL CONDUCT IN PANEL CASE NO. 23236.

### No. A06–1400.

Supreme Court of Minnesota.

March 8, 2007.

---

Allen I. Saeks, Minneapolis, MN, for Appellant.

Martin A. Cole, Director, Craig D. Klausing, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for Respondent.

## OPINION

### PER CURIAM.

This case presents the issue of whether a supervising lawyer has a duty to disclose to a client that another lawyer at the law firm, working on a matter for the client, had not been authorized to practice law for more than two years. This case also asks whether it is a violation of the Minnesota Rules of Professional Conduct for a law firm to bill a client at a contractually agreed upon rate for lawyer services when the lawyer provided these services during a time when the lawyer was not authorized to practice law.

The following facts were found by a panel of the Lawyers Professional Responsibility Board and are essentially undisputed. Appellant lawyer (hereinafter Appellant) was admitted to practice law in Minnesota in 1977 and currently is a shareholder in a Minneapolis law firm (hereinafter Law Firm). As a lawyer with the Law Firm, Appellant represented a government entity (hereinafter Client). Another lawyer in the Law Firm (hereinafter Restricted Lawyer) worked with Appellant in providing representation to the Client.

On August 27, 2002, Restricted Lawyer, who is not a subject of this disciplinary matter, was placed on CLE restricted status pursuant to Rule 12, Rules of the Minnesota Board of Continuing Legal Education, for failure to comply with Minnesota's CLE requirements.[1] Appellant was unaware of Restricted Lawyer's failure to comply with the CLE requirements or that he was not authorized to practice law. On January 21, 2005, Appellant learned of Restricted Lawyer's status and at that time the Law Firm notified Restricted Lawyer that he was prohibited from engaging in the practice of law or representing any person or entity on behalf of the Law Firm in the State of Minnesota. However, Appellant did not inform the Client of Restricted Lawyer's status. Appellant continued working with Restricted Lawyer as a "non-lawyer assistant" in a supervisory capacity. In late January 2005, the Human Resources Manager of the Law Firm removed the reference in the Law Firm's website that Restricted Lawyer was authorized to practice law.

In late February 2005, the Client discovered that Restricted Lawyer's profile had been changed on the Law Firm's website and that the website no longer indicated that Restricted Lawyer was licensed to practice law in Minnesota. On February 22, 2005, the Client contacted Appellant and asked why Restricted Lawyer's profile

---

1. When a lawyer fails to comply with the state's CLE requirements, he or she is placed on involuntary restricted status pursuant to Rule 12, Rules of the Minnesota State Board of Continuing Legal Education. *See also* Rule 2(L), Rules of the Minnesota State Board of Continuing Legal Education. A lawyer on involuntary restricted status "may not engage in the practice of law or represent any person or entity in any legal matter or proceedings within the State of Minnesota." Rule 12(b), Rules of the Minnesota State Board of Continuing Legal Education.

had changed on the Law Firm's website. Appellant did not acknowledge that she was then aware that Restricted Lawyer had not been authorized to practice law for almost two and one-half years. Appellant told the Client that she would look into the matter and get back to the Client.

On February 23, 2005, Appellant telephoned the Client and for the first time acknowledged Restricted Lawyer's non-compliance with CLE requirements. However, Appellant did not tell the Client that Restricted Lawyer had been on involuntary restricted status and had not been authorized to practice law since 2002, a period during which Restricted Lawyer was providing legal services to the Client although not authorized to do so.

On April 13, 2005, Appellant submitted a statement for services rendered to the Client by the Law Firm. The statement included charges for work performed by Restricted Lawyer while he was not authorized to practice law, but neither the cover letter nor the bill stated that Restricted Lawyer was not authorized to practice law at the time the services were rendered. Moreover, Restricted Lawyer's services were billed at $205 per hour, the rate charged for work done by lawyers for the Client.

On July 14, 2005, the Client e-mailed Appellant and inquired about the time period that Restricted Lawyer was without a license and whether the Client was billed for Restricted Lawyer's time when he was not authorized to practice law. Appellant responded that Restricted Lawyer had been on involuntary restricted status since August 27, 2002, and sent the Client a second billing statement. In the second billing statement, Appellant removed all of the charges for time she had personally billed to the Client, eliminating accidental double billing for administrative time she had spent supervising Restricted Lawyer.

However, the second billing statement continued to reflect a $205 per hour charge for Restricted Lawyer's services.

The Client objected to being billed for Restricted Lawyer's time while he was not authorized to practice law. Eventually, the Law Firm refunded to the Client all fees paid for Restricted Lawyer's time during the period he was not authorized to practice law. The Client then filed an ethics complaint with the Director of the Office of Lawyers Professional Responsibility.

After investigating the complaint, the Director concluded that Appellant had committed ethical violations of an "isolated and non-serious nature" and privately admonished Appellant for violating Minn. R. Prof. Conduct 1.4(b) by failing to inform the Client that Restricted Lawyer was not authorized to practice law and for violating Minn. R. Prof. Conduct 1.5(a) for billing the Client for Restricted Lawyer's time at the Law Firm's lawyer rate during the period that Restricted Lawyer was suspended from the practice of law.

Pursuant to Rule 8(d)(2)(iii), Rules on Lawyers Professional Responsibility (RLPR), Appellant demanded that the Director present the charges to a panel of the Lawyers Professional Responsibility Board for de novo consideration. The panel conducted a hearing and determined that Appellant had violated Rules 1.4(b) and 1.5 and that this violation warranted issuing an admonition. The panel further concluded that the decision of other lawyers in the Law Firm not to disclose the status of Restricted Lawyer's license did not impact Appellant's obligation to comply with the rules.

██ Findings made in lawyer discipline cases are reviewed under a clearly erroneous standard. *In re Panel File Number 99–5*, 607 N.W.2d 429, 431 (Minn.

2000); *see also In re X.Y.*, 529 N.W.2d 688, 689–90 (Minn.1995) (noting that since admonitions are a form of attorney discipline, the clearly erroneous standard should be used to review findings). Great weight is given to the recommendations of the panel, but this court has the final responsibility for determining appropriate discipline for violations of the rules of professional conduct. *In re Panel File Number 99–5*, 607 N.W.2d at 431. Sanctions are imposed according to the unique facts of each case, and when considering appropriate sanctions for misconduct, "we weigh the following factors: (1) the nature of the misconduct, (2) the cumulative weight of the disciplinary violations, (3) the harm to the public, and (4) the harm to the legal profession." *Id.*

## I.

Rule 1.4(b) states that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Lawyers comply with Rule 1.4 when they provide their clients with "sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued." Rule 1.4 cmt.— 1985; *see also In re Keate*, 488 N.W.2d 229, 234 (Minn.1992) (noting that Rule 1.4(b) imposes an affirmative duty on lawyers to explain to their clients how they intend to proceed in a matter).

■ Appellant argues that the Director erroneously disciplined her for failing to disclose that Restricted Lawyer was not authorized to practice law in that Appellant did not have an affirmative duty to disclose information to the Client that lawyers on involuntary restricted status are not themselves required to disclose under either the Minnesota Rules of Professional Conduct or the Rules on Lawyers Professional Responsibility. Appellant also asserts that the requirement under Rule 20, RLPR, that disciplinary proceedings be kept confidential[2] led her to reasonably conclude that she did not need to disclose Restricted Lawyer's license status to the Client.

The Director counters that under the circumstances of this case, the absence of a rule compelling disclosure is not determinative. Rather, this case concerns a lawyer's duty to disclose information that is reasonably necessary for clients to make informed decisions about their representation. The Director further notes that since Restricted Lawyer was not disciplined until September 2005 and Appellant disclosed that Restricted Lawyer was not authorized to practice law in February 2005, Appellant's Rule 20 argument is more of an afterthought than a rule she relied on to her detriment.

A lawyer on involuntary restricted status does not have the same mandatory disclosure obligations as those imposed upon lawyers who have been disbarred, suspended, or administratively suspended from practice. *See* Rule 26, RLPR (requiring disbarred, suspended, or lawyers on disability inactive status to inform their clients of their status); Rule 30, RLPR (requiring lawyers on administrative suspension to inform their clients of their status). The absence of such a rule does not mean that a lawyer's involuntary suspension from the practice of law for failure to comply with CLE requirements is not of interest to a client.

---

**2.** Restricted Lawyer was also under investigation by the Board for unauthorized practice and failure to cooperate with the Director.

Like a suspended or disbarred lawyer, a lawyer on involuntary restricted status may not engage in the practice of law. Rule 12(B), Rules of the Minnesota State Board of Continuing Legal Education. It is not unreasonable to assume that lawyers are typically retained because of their ability to practice law. In fact, a lawyer's authorization or lack of authorization to practice makes a significant difference in his or her ability to represent a client. *See* Minn.Stat. § 481.02, subd. 1 (stating that unlicensed individuals may not appear as attorneys in any action or proceeding in any court in the state, hold themselves out as competent or qualified to give legal advice or counsel, prepare legal documents, or engage in advising or counseling in law or acting as attorney or counselor at law) (2006). It is important for a client to know whether or not his or her lawyer is permitted to practice law. *See In re Westby*, 639 N.W.2d 358, 364, 365, 368 (Minn. 2002) (concluding that the lawyer had violated Rule 1.4(b) by failing to disclose to clients that she was suspended from the practice of law when she accepted retainers from clients, obtained a continuance for a matter, and helped clients prepare for hearings); *see also Attorney Griev. Comm'n v. Cassidy*, 362 Md. 689, 766 A.2d 632, 636 (2001) (concluding that under Maryland Rule of Professional Conduct 1.4(b), which mirrors Minn. R. Prof. Conduct 1.4(b), a lawyer's failure to disclose that he was suspended from the practice of law violated Rule 1.4(b) because the matter the client had contracted with the lawyer to complete could not be completed by an unlicensed attorney and had the lawyer informed the client of his suspension, the client could have "made the informed choice to seek another attorney.").

In this case, a three-member panel heard testimony from witnesses and reviewed numerous documents and came to the conclusion that Appellant's conduct in failing to explain to the Client that Restricted Lawyer was on CLE restricted status violated Rule 1.4(b). Under Rule 1.4 the "guiding principle" of communicating with a client is that "the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character or representation." Rule 1.4 cmt.–1985.

Appellant testified that she did not disclose that Restricted Lawyer was not authorized to practice law to the Client in part because the work Restricted Lawyer had done while on involuntary restricted status had been "done in a way that [she] thought was professional," and that an opinion letter written by Restricted Lawyer while he was not authorized to practice law was an opinion that the Law Firm supported. However, the quality of Restricted Lawyer's work was not at issue for the Client. The Client testified that it felt it was important for the Client to know that Restricted Lawyer was not authorized to practice law because it had been told that services would be provided by a lawyer, when instead the services were provided by someone who was not authorized to practice law.

For the Client, Restricted Lawyer's CLE restricted status created a

> whole bunch of red flags. What did this mean about different matters that he had handled? What did it mean about bond issues that he had been involved in? What did that mean about malpractice coverage for that firm? We also had concerns about how it is possible for a lawyer who is handling what are relatively complex matters [to be] unable to simply file a CLE affidavit? * * * We were very concerned about it.

Moreover, as a government entity, the Client had been using public money to

finance its legal work and the Client was concerned about how paying legal fees for a lawyer who was not authorized to practice law would impact the public's perception that the Client was responsibly spending public money. The Client felt that knowledge about Restricted Lawyer's status would have allowed the Client to make "some decisions about what [it] thought was in [its] best interest."

The record supports the panel's conclusion that the status of Restricted Lawyer's license was important to the Client. On January 1, 2004, the Client and the Law Firm entered into a contractual agreement for legal services that provided that Appellant and Restricted Lawyer would be the lawyers primarily responsible for providing services to the Client. During the entire period of that contract, Restricted Lawyer was not authorized to engage in the practice of law. As the Client testified, Restricted Lawyer's status raised a "whole bunch of red flags" and created concerns about the soundness of legal opinions rendered by the firm and violations of public trust. Therefore, under the circumstances presented in this case, we believe that the Panel properly concluded that Appellant had violated Rule 1.4(b).

Under Rule 12(D), Rules of the Minnesota State Board of Continuing Legal Education, transfer from restricted status to active status can easily be accomplished by notifying the Director of an intent to resume active status, submitting a $125 transfer fee, and completing the required number of CLE hours. Because transfer from involuntary restricted status to active status can be accomplished easily, it is possible that a lawyer could be placed on involuntary restricted status and immediately request a transfer to active status by submitting paperwork showing compliance with CLE requirements and the requisite fee. In such a situation, where the lawyer's time as a restricted lawyer is limited, it may not be necessary to inform the client because the impact on the client is likely to be minimal. But, those are not the facts presented in this case.

## II.

■ Rule 1.5(a) states that "[a] lawyer's fee shall be reasonable." Appellant maintains she had a good-faith belief that the fee charged to the Client was reasonable because it reflected a deep discount in Restricted Lawyer's normal hourly rate and took into consideration the factors reflected in Rule 1.5(a). The Director acknowledges that the factors cited by Appellant are appropriate to consider when determining the reasonableness of a fee charged by a lawyer. However, in this case, the Director notes that Restricted Lawyer was not allowed to engage in the practice of law and therefore the Client should not have been charged for Restricted Lawyer's services at the same rate that the client would have been charged had Restricted Lawyer been authorized to practice law.

■ The Client and the Law Firm had a contractual agreement that the Client would be charged $205 per hour for services performed by lawyers. According to this agreement, any work performed by a paralegal would be billed to the client at $125 an hour. On January 21, 2005, when the Law Firm discovered that Restricted Lawyer was not authorized to practice law, the Law Firm prohibited Restricted Lawyer from engaging in the practice of law. Appellant testified that during the time she supervised Restricted Lawyer she treated his work just as she would have treated work performed by a senior paralegal. Yet, when Appellant submitted the April billing statement to the Client, Restricted Lawyer's services were billed at the contractual attorney rate of $205 per

hour. Although the $205 hourly rate negotiated by the Client was well below Restricted Lawyer's normal hourly rate of $355 per hour, Restricted Lawyer's normal hourly rate is not the relevant benchmark. At the time that Restricted Lawyer was providing services, he was not permitted to engage in the practice of law. In essence, Restricted Lawyer could function only as a paralegal. Given the clear language of the contract between the Client and the Law Firm, it is reasonable to conclude that Appellant should have billed Restricted Lawyer's services at a paralegal rate while he was not authorized to practice law; Appellant's failure to do so violated Rule 1.5(a). We hold that the panel properly concluded that Appellant violated Rule 1.5(a), and affirm that an admonition should issue.

Affirmed.