STATE OF MINNESOTA

IN SUPREME COURT

A15-2078

Original Jurisdiction

Per Curiam
Dissenting, Anderson, Lillehaug, and
Chutich, JJ.

In re Charges of Unprofessional Conduct
in Panel File No. 39302

Filed:  August 31, 2016
Office of Appellate Courts

_____

Susan M. Humiston, Director, Binh T. Toung, Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for respondent.

Eric T. Cooperstein, Law Office of Eric T. Cooperstein, PLLC, Minneapolis, Minnesota, for appellant.

_____

S Y L L A B U S

1.      Based on appellant's representation of Minnesota residents with respect to a

Minnesota judgment and attempt to negotiate with a Minnesota lawyer, via e-mail, the

satisfaction of that judgment, the Panel's finding that appellant engaged in the unauthorized

1

practice of law in Minnesota in violation of Minn. R. Prof. Conduct 5.5(a), even though appellant was not physically present in Minnesota, was not clearly erroneous.

2.    The Panel's finding that appellant was not authorized to practice law in Minnesota temporarily, pursuant to Minn. R. Prof. Conduct 5.5(c), was not clearly erroneous where appellant took no steps to find local counsel or be admitted to practice pro hac vice, and appellant's clients were Minnesota residents with a debt owed to a Minnesota resident that was governed by Minnesota law.

3.    In this case, an admonition is the appropriate disposition for an out-of-state attorney who engaged in the unauthorized practice of law in Minnesota.

Affirmed.

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (the Director) issued a private admonition to appellant for engaging in the unauthorized practice of law in Minnesota. Appellant demanded that the Director present the charge to a Panel of the Lawyers Professional Responsibility Board (the Panel). Following an evidentiary hearing, the Panel affirmed the Director's admonition, finding that appellant had engaged in the unauthorized practice of law in Minnesota, in violation of Minn. R. Prof. Conduct 5.5(a), and that the misconduct was isolated and non-serious. Appellant filed a notice of appeal, contesting the Panel's determination that his conduct violated Minn. R. Prof. Conduct 5.5. *See* Rule 9(m), Rules on Lawyers Professional Responsibility (RLPR). We hold that

2

engaging in e-mail communications with people in Minnesota may constitute the unauthorized practice of law in Minnesota, in violation of Minn. R. Prof. Conduct 5.5(a), even if the lawyer is not physically present in Minnesota. The Panel's finding that appellant engaged in the unauthorized practice of law in Minnesota, in violation of Minn. R. Prof. Conduct 5.5(a), was not clearly erroneous. Appellant represented a Minnesota couple with respect to a Minnesota judgment and attempted to negotiate, via e-mail, the satisfaction of that judgment with a Minnesota lawyer, and was not authorized to practice law in Minnesota temporarily. We further conclude that the appropriate disposition for this misconduct is an admonition.

## I.

Appellant is an attorney licensed to practice law in the state of Colorado, where he maintains an office and has been practicing environmental law since 1986. He has also practiced personal injury law for approximately 7 years. Part of his litigation practice includes debt collection. Appellant is admitted to practice law in New York, Florida, and Alaska, but is currently on inactive status in those states. Appellant is also admitted to practice in federal court in the District of Colorado, the District of Alaska, the Southern and Western Districts of New York, and the United States Court of Appeals for the Ninth and Tenth Circuits. Appellant is not licensed to practice law in Minnesota.

Appellant's mother- and father-in-law live in Minnesota. They contacted appellant in May 2014 to obtain assistance regarding a judgment entered against them in conciliation court in Minnesota for $2,368.13 in favor of their condominium association, Voyager

3

Condominium Homeowners' Association, Inc. (VCHA).  The couple told appellant that VCHA's attorney, D.R., a Minnesota-based lawyer and the complainant in this case, was harassing them with telephone calls attempting to collect on the judgment.  The couple asked appellant for his assistance in negotiating with D.R. regarding payment of the outstanding judgment.

Appellant sent an e-mail to D.R. in late May 2014, informing D.R. that he was representing his in-laws and instructing D.R. to direct all future communications to him instead.  Appellant and D.R. exchanged approximately two dozen e-mails between May 2014 and September 2014.  In his first responsive e-mail to appellant, D.R. asked whether appellant was licensed to practice law in Minnesota.  Appellant replied that he was not licensed in Minnesota and that if he needed to file suit in Minnesota he would hire local counsel.  The subsequent e-mails consisted of discussions regarding the in-laws' assets and ability to pay and whether the VCHA judgment would have priority in a foreclosure sale.  Appellant attached financial disclosure forms to one of his e-mails and made a settlement offer.

In the penultimate e-mail exchange between the two attorneys, D.R. asserted that appellant was engaging in the unauthorized practice of law because he was not licensed in Minnesota.  The final e-mail prior to D.R. filing an ethics complaint was a settlement proposal from appellant to D.R. on that same day.  The Director received D.R.'s ethics complaint in October 2014.  Approximately 2 months after filing the complaint, D.R. sent additional e-mails to appellant to determine whether the settlement offer was still available

4

and whether appellant still represented his in-laws. Appellant did not respond to the subsequent e-mails and had no further involvement in the case.

Nothing in the record shows that appellant researched whether his activities constituted the unauthorized practice of law under the Minnesota Rules of Professional Conduct. When asked by the Panel at the evidentiary hearing whether he researched the rules in Minnesota, appellant said that he did not recall. Appellant admitted that he had not researched Minnesota law on foreclosure and how it would apply to his in-laws' case. Appellant also admitted that when he considered the relevant law and the rules of professional conduct, he was more familiar with the laws and rules in Colorado.

The Panel affirmed the Director's admonition, finding that clear and convincing evidence demonstrated a violation of Minn. R. Prof. Conduct 5.5(a). *See* Rule 9(j)(1)(iii), RLPR. The Panel found that appellant "is not licensed in Minnesota . . . . He is licensed in Colorado . . . . He was—although maybe not paid, he certainly has held out the fact that he represented clients, which regardless of whether they're related or not, he did represent them, admitted to representing them in a purely Minnesota case."

Pursuant to Rule 9(m), RLPR, appellant appealed the admonition to this court. Specifically, appellant challenges the Panel's determinations that he violated Minn. R. Prof. Conduct 5.5(a) and that his conduct did not fall within one of the exceptions in Minn. R. Prof. Conduct 5.5(c). We address each issue in turn.

5

II.

We turn first to appellant's claim regarding Rule 5.5(a).  It states, in relevant part, that "[a] lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction . . . ."  Minn. R. Prof. Conduct 5.5(a).

Appellant contends that he did not violate Rule 5.5(a) because he did not practice law *in* Minnesota.  According to appellant, a lawyer practices *in* a jurisdiction in one of three ways:  (1) by being physically present in the jurisdiction; (2) by establishing an office or other systematic and continuous presence in the jurisdiction; or (3) by entering an appearance in a matter through the filing of documents with a tribunal.  Appellant argues that e-mail communication directed to a jurisdiction in which the lawyer is not admitted to practice does not fall within the definition of practicing law *in* a jurisdiction, and thus the Panel erred in its determination that he violated Rule 5.5(a).

We review findings made in lawyer discipline cases under a clearly erroneous standard.  *In re Panel Case No. 23236*, 728 N.W.2d 254, 257-58 (Minn. 2007).  We "will uphold the panel's factual findings if they have evidentiary support in the record and are not clearly erroneous."  *In re Mose*, 754 N.W.2d 357, 360 (Minn. 2008) (citing *In re Singer*, 735 N.W.2d 698, 703 (Minn. 2007)).

Appellant concedes for the purpose of this appeal that he engaged in the practice of law, albeit in Colorado.  Such a concession is consistent with our prior cases holding that negotiating the resolution of a claim on behalf of a client constitutes the practice of law.  *See In re Ray*, 610 N.W.2d 342, 343, 346 (Minn. 2000) (upholding the referee's finding

6

that the attorney engaged in the unauthorized practice of law by negotiating with the county attorney on behalf of a client while the attorney was subject to a disciplinary suspension); *In re Ray*, 452 N.W.2d 689, 693 (Minn. 1990) (holding that "the record support[ed] the referee's conclusion" that the attorney engaged in the unauthorized practice of law by attempting to negotiate settlements for two clients). Appellant maintains, however, that an attorney does not practice law in another jurisdiction merely by engaging in e-mail communications with individuals in that jurisdiction. Whether an attorney engages in the practice of law *in* Minnesota by sending e-mails from *another* jurisdiction is a matter of first impression.

Rule 5.5(a) of the Minnesota Rules of Professional Conduct does not explicitly define what it means to practice law *in* a jurisdiction. Certainly, physical presence is one way to practice law *in* a jurisdiction. But, as we set forth below, it is not the only way.

Other courts have addressed the issue of whether an attorney practices law in a jurisdiction even though the attorney was not physically present in that jurisdiction. In *Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court*, 949 P.2d 1, 5-6 (Cal. 1998), the California Supreme Court analyzed what constituted the practice of law in a jurisdiction by looking at the nature of the legal representation in the jurisdiction, instead of focusing solely on physical presence. In determining what it means to practice law in California, the court considered whether the lawyer had "sufficient contact with the California client to render the nature of the legal services a clear legal representation" and whether the lawyers' contact with California was merely "fortuitous or attenuated." *Id.*

7

at 5. The court determined that a lawyer "may practice law in the state . . . although not physically present here by advising a California client on California law in connection with a California legal dispute by telephone, fax, computer, or other modern technological means." *Id.* at 5-6; *see also In re Babies*, 315 B.R. 785, 791-93 (Bankr. N.D. Ga. 2004) (concluding that attorneys who were physically present in Illinois practiced law in Georgia by representing Georgia clients with respect to a bankruptcy, preparing documents related to that bankruptcy, and communicating with these clients via the telephone and mail).

The reasoning in *Birbrower* is persuasive. Based on that reasoning, we conclude that the Panel did not clearly err by finding that appellant practiced law *in* Minnesota, in violation of Minn. R. Prof. Conduct 5.5(a).[1] Appellant contacted D.R., a Minnesota lawyer, and stated that he represented Minnesota clients in a Minnesota legal dispute. This legal dispute was not interjurisdictional; instead, it involved only Minnesota residents and

---

[1] Clients frequently do business in multiple states, and modern technology makes rapid communication across state borders routine. As a result, many lawyers are involved in multijurisdictional practices. The rule governing the unauthorized practice of law accounts for multijurisdictional practices. It has exceptions that allow lawyers who are not admitted to practice in Minnesota to practice here temporarily in certain circumstances. *See* Minn. R. Prof. Conduct 5.5(c); *see also* Rule 9, Rules for Admission to the Bar (addressing temporary house counsel license). If there are concerns that these exceptions do not adequately meet client needs, the better way to address such concerns would be through filing a petition to amend Rule 5.5(c). The same is true for the dissent's claim that Rule 5.5(c) should allow lawyers not licensed to practice law in Minnesota to temporarily represent family members or friends in minor matters involving only Minnesota and Minnesota law. At the same time, lawyers must be cognizant of and respect each state's obligation to enact regulations that ensure the lawyers who represent its citizens are competent to do so. *See* Minn. R. Prof. Conduct 5.5 cmt. 2 ("Whatever the definition" of the practice of law, "limiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons.").

a debt arising from a judgment entered by a Minnesota court. Appellant instructed D.R. to refer all future correspondence to him, and he continued to engage in correspondence and negotiations with D.R. over the course of several months. Appellant requested and received financial documents from his Minnesota clients and advised them on their legal options. By multiple e-mails sent over several months, appellant advised Minnesota clients on Minnesota law in connection with a Minnesota legal dispute and attempted to negotiate a resolution of that dispute with a Minnesota attorney. Appellant had a clear, ongoing attorney-client relationship with his Minnesota clients, and his contacts with Minnesota were not fortuitous or attenuated. Thus, there is ample support for the Panel's finding that appellant practiced law in Minnesota.

## III.

Next, we turn to appellant's claim that even if the Panel did not err in determining that he was practicing law in Minnesota in violation of Minn. R. Prof. Conduct 5.5(a), his conduct was permitted under one of the exceptions in Minn. R. Prof. Conduct 5.5(c). Appellant argues that Rule 5.5(c)(2) authorized his conduct because he reasonably believed that he would be able to associate with local counsel and be admitted pro hac vice if necessary. Appellant further claims that Rule 5.5(c)(4) authorized his conduct because his in-laws reached out to him for assistance on a matter within his expertise; thus the matter "arose out of [Appellant's] law practice."[2]

---

[2] At the Panel hearing, appellant argued that Minn. R. Prof. Conduct 5.5(c)(3) authorized his conduct. The Panel addressed Rule 5.5(c)(3) in its findings. In his brief to

Rule 5.5(c) permits an attorney to practice temporarily in a jurisdiction in which the attorney is not admitted. It states:

> A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction which:
> . . . .
>
> (2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in the proceeding or reasonably expects to be so authorized;
>
> . . .
>
> or
>
> (4) are not within paragraphs (c)(2) or (c)(3) and arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice.

Minn. R. Prof. Conduct 5.5(c).

Under Minnesota Rules of Professional Conduct 5.5(c)(2), a lawyer admitted in another jurisdiction may provide legal services in Minnesota on a temporary basis if the lawyer's services are reasonably related to a pending or potential proceeding before a tribunal and the lawyer reasonably expects to be authorized by law to appear in the proceeding. Comment 10 explains that a lawyer rendering services in Minnesota on a

---

this court, appellant does not raise Rule 5.5(c)(3). Instead, he argues that Minn. R. Prof. Conduct 5.5(c)(2) and (4) authorized his conduct. It is not clear whether appellant properly preserved his arguments regarding the application of Rule 5.5(c)(2) and (4), because he did not raise them with the Panel. The Director, however, does not argue that appellant has forfeited these issues, and the Director expressly stated at oral argument that they were properly before us. As a result, we will assume these arguments are properly before us and address them.

10

temporary basis is permitted to engage in conduct in anticipation of a proceeding or hearing in which the lawyer reasonably expects to be admitted pro hac vice. Minn. R. Prof. Conduct 5.5(c)(2) cmt. 10.

Appellant suggests that there was a potential proceeding that could be brought on behalf of his in-laws. Because of this belief, appellant contends Rule 5.5(c)(2) protects him. The Director persuasively argues that appellant knew further litigation was unlikely because a court had already decided the underlying case involving his in-laws, and appellant was simply negotiating a potential debt resolution. In addition, Rule 5.5(c)(2), by its plain language, requires more than an attorney's speculation that the attorney can find local counsel and be admitted to practice pro hac vice. Appellant's e-mail correspondence does not indicate that he took steps to secure local counsel or investigate the possibility of pro hac vice admission. Thus, we conclude there is no support for appellant's claim that his conduct was authorized by Rule 5.5(c)(2).

Under Minnesota Rules of Professional Conduct 5.5(c)(4), a lawyer admitted in another jurisdiction may provide legal services in Minnesota on a temporary basis if the lawyer's services are not covered by paragraphs (c)(2) and (c)(3) and "arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice." Appellant contends that his services arose out of or were reasonably related to his practice in Colorado because the clients are his relatives who "reached out to him for assistance" and appellant's environmental and personal-injury practice involves debt collection.

Comment 14 of Minnesota Rules of Professional Conduct 5.5 provides guidance on this issue. Specifically, comment 14 instructs that several factors may demonstrate that an attorney's temporary legal services in Minnesota reasonably relate to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice ("lawyer's home jurisdiction"), including: whether the client is a resident of or has substantial contacts with the lawyer's home jurisdiction; whether the client has previously been represented by the lawyer; whether a significant aspect of the matter involves the law of the lawyer's home jurisdiction; whether the client's activities or the legal issues involve multiple jurisdictions; or whether the services "draw on the lawyer's recognized expertise developed through the regular practice of law on behalf of clients in matters involving a particular body of federal, nationally-uniform, foreign, or international law." Minn. R. Prof. Conduct 5.5 cmt. 14; *see also* Restatement (Third) of the Law Governing Lawyers, § 3 cmt. e (Am. Law Inst. 2000) (stating that a lawyer may provide legal services outside of a home jurisdiction if the services reasonably relate to the lawyer's practice in his or her home jurisdiction and listing factors similar to those in Minn. R. Prof. Conduct 5.5 cmt. 14 for determining if the services reasonably relate to the lawyer's practice in the home jurisdiction, including whether "the legal issues involved are primarily either multistate or federal in nature").

The legal services appellant provided to his in-laws were unrelated to his environmental and personal-injury practice in Colorado. The record establishes that appellant was involved in litigation in Colorado state court, including eight trials in the past

12

7 years in which collection issues arose,[3] and that appellant negotiated the resolution of a debt with an out-of-state creditor on behalf of several Colorado residents. Although Rule 5.5(c) may permit appellant to negotiate with a Colorado client's out-of-state creditor because this representation is reasonably related to appellant's Colorado practice, the facts of this case are substantially different. Appellant's in-laws are not Colorado residents, and appellant had no prior attorney-client relationship with them.

Moreover, appellant's representation of his in-laws did not "arise out of" or "reasonably relate" to his practice in Colorado simply because his in-laws contacted him in Colorado or appellant has done collections work in Colorado. As the Director notes, appellant's in-laws were not long-standing clients; nor was there any connection between the in-laws' case and the state or laws of Colorado. And while appellant's Colorado practice may involve judgment collections work, nothing in the record establishes that this work was based on a body of federal or nationally uniform law.[4] To the contrary,

---

[3]    Three exhibits in the Panel proceeding are appellant's filings in two Colorado state court matters related to judgments for costs and attorney fees that had been entered against his clients.

[4]    The dissent's reliance on comment 14 to Rule 5.5 to support its claim that appellant's representation of his in-laws was reasonably related to his Colorado practice is misplaced. According to the dissent, the representation was reasonably related to appellant's Colorado practice because "appellant has developed experience and expertise in the area of judgment collections through his participation in eight trials and multiple filings." The dissent acknowledges, however, that the record does not establish that "appellant's collection practice is 'nationally uniform.' " *See* Minn. R. Prof. Conduct 5.5 cmt. 14 (stating that one of the factors that may demonstrate that a lawyer's temporary legal services in Minnesota reasonably relate to the lawyer's practice in a home jurisdiction is whether the services "draw on the lawyer's recognized expertise developed through the

13

appellant's clients were Minnesota residents with a debt that arose in Minnesota that they owed to a Minnesota resident and that was governed by Minnesota law. Accordingly, Rule 5.5(c)(4) does not apply to appellant's conduct.

## IV.

Finally, we consider the appropriate discipline for appellant's misconduct. We give great weight to the recommendations of the Panel, but we have "the final responsibility for determining appropriate discipline for violations of the rules of professional conduct". *Panel Case No. 23236*, 728 N.W.2d at 258. We do not impose sanctions in attorney-discipline cases as punishment, but rather we impose sanctions "to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney [and] other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). We impose sanctions according to the unique facts of each case, and "when considering appropriate sanctions for misconduct, we weigh the following factors: (1) the nature of the misconduct, (2) the cumulative weight of the disciplinary violations, (3) the harm to the public, and (4) the

---

regular practice of law on behalf of clients in matters involving a particular body of federal, nationally-uniform, foreign, or international law"). In fact, the record establishes the opposite. When appellant asked D.R. whether relevant Minnesota law was the same as Colorado law, D.R. indicated that it was not.

Instead, the dissent argues, without citing any legal support for its claim, that the subject on which an attorney has expertise does not need to be nationally uniform in order for legal services provided outside the attorney's home jurisdiction to reasonably relate to the attorney's practice in his or her home jurisdiction. We disagree. Rule 5.5(c) is an exception to the general prohibition on the unauthorized practice of law. By interpreting the exception to apply to expertise in any subject matter, the dissent allows the exception to swallow the general rule.

14

harm to the legal profession." *Panel Case No. 23236*, 728 N.W.2d at 258 (citation omitted) (internal quotation marks omitted).

The nature of the misconduct in this case is non-serious. Appellant wrongly believed that he could negotiate a settlement in Minnesota without being licensed to practice law in the state. The cumulative weight of the misconduct is also minimal. Appellant engaged in a series of e-mail communications with one attorney in a single matter involving appellant's family members. In addition, the only harm appellant's clients suffered was a delay in the resolution of their debt because of appellant's actions. Accordingly, a private admonition is the appropriate discipline for appellant.

Affirmed.

ANDERSON, Justice (dissenting).

The court affirms the Panel's determination that appellant violated Rule 5.5(a), which provides that a "lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction." Minn. R. Prof. Conduct 5.5(a). But as an exception to this rule, a lawyer admitted in another jurisdiction may provide temporary legal services in Minnesota if the services "arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice." Minn. R. Prof. Conduct 5.5(c)(4). The court concludes that Rule 5.5(c)(4) does not apply because the services that appellant provided here—assisting family members with a judgment-collection negotiation—are not "reasonably related" to his practice of law in Colorado. I disagree.

Appellant argues that Rule 5.5(c)(4) applies because his in-law's judgment-collection matter was "reasonably related" to his practice in Colorado, which includes judgment-collection work. Appellant contends that he has experience with judgment collections and that collection work is an integral and necessary part of his litigation practice in Colorado. Upon review of the record, I agree that appellant's temporary provision of legal assistance to his parents-in-law regarding the negotiation of a small collection matter in Minnesota is "reasonably related" to appellant's practice of law in Colorado. Therefore, the exception in Rule 5.5(c)(4) applies, and respectfully, I dissent.

In concluding that appellant's work for his parents-in-law was not "reasonably related" to his practice in Colorado, the court primarily focuses on appellant's practice in the areas of environmental and personal-injury law. But, as the court notes, appellant also has experience with collection work, as reflected in the record. Appellant argues that he has engaged in and developed experience with collection work in his litigation practice. More specifically, appellant testified to the Panel that "collection work" is "an integral part of my litigation practice." He testified that in the past seven years, he has engaged in judgment-collection work and has participated in eight trials in this area of practice. In addition, he demonstrated that, in a single previous month, he had made three filings dealing with judgment collections, which he submitted to the Panel as exhibits.

Based on this record, I would conclude that appellant's assistance with a small judgment-collection negotiation for his parents-in-law, including the emails to D.R., were "reasonably related" to appellant's practice in Colorado, which satisfies Rule 5.5(c)(4). The "reasonably related" exception in Rule 5.5(c)(4) is a *broad*, catch-all exception that is intended to exempt circumstances such as those presented here. Moreover, the familial connection between appellant and his in-laws, and the fact that they contacted appellant in Colorado for assistance, should be an additional consideration that supports a finding that the matter was "reasonably related" to his practice in Colorado under Rule 5.5(c)(4).

The exception established by ABA Model Rule 5.5(c)(4)—which is identical in wording to our Rule 5.5(c)(4)—is described as a "*broad* catch-all" and a "safe harbor" for out-of-state lawyers to engage in temporary practice that is "reasonably related" to the lawyer's home-state practice. Ronald D. Rotunda & John S. Dzienkowski, *Legal Ethics:*

*The Lawyer's Deskbook on Professional Responsibility* § 5.5-2, at 1112 (2016) (emphasis added); *see also* Am. Bar Ass'n & Bureau of Nat'l Affairs, Inc., *ABA/BNA Lawyer's Manual on Professional Conduct* 21:2110 (2009).

Rule 5.5(c)(4) also closely follows the Restatement, which states: "A lawyer currently admitted to practice in a jurisdiction may provide legal services to a client: . . . at a place within a jurisdiction in which the lawyer is not admitted to the extent that the lawyer's activities arise out of or are otherwise reasonably related to the lawyer's practice under Subsection (1) or (2)." Restatement (Third) of the Law Governing Lawyers § 3(3) (Am. Law Inst. 2000). One of the comments to this section states that it is "*clearly permissible* for a lawyer from a home-state office to direct communications to persons and organizations in other states (in which the lawyer is not separately admitted), by letter, telephone, telecopier, or other forms of electronic communication." *Id.* at § 3 cmt. e (emphasis added).

As explained in the Restatement, the prior, more restrictive rules governing interstate practice by nonlocal lawyers "were formed at a time when lawyers conducted very little [interstate] practice" and thus "imposed little actual inconvenience." *Id.* By contrast today, "as interstate and international commerce, transportation, and communications have expanded, clients have increasingly required a truly interstate . . . practice by their lawyers." *Id.* The ABA recognized that rule changes were needed as the frequency and ease of multistate practice increased, supported by electronic communication and remote services (e.g., e-mails, phone and video conferencing, electronic filing). Rotunda & Dzienkowski, *supra*, at 1100-01. In this modern context,

lawyers routinely communicate from one jurisdiction with a client located in another jurisdiction. *Id.* at 1101. Thus, the ABA Model Rules "encouraged . . . [the removal of] unnecessary restrictions on interstate practice." *Id.* at 1100-01.

The comments to Rule 5.5(c)(4) provide guidance on whether a "reasonable relationship" exists between the lawyer's temporary services in Minnesota and the lawyer's practice in another jurisdiction. *See* Minn. R. Prof. Conduct 5.5 cmt. 13-14. Comment 14 explains that "[a] variety of factors" may evidence such a reasonable relationship. *Id.* at cmt. 14. The examples and factors to consider in comment 14 are not exhaustive, nor are they mandatory. *See id.* (providing examples and factors that "may" or "might" support a reasonable relationship); *see also* Minn. R. Prof. Conduct, Scope cmt. 14 ("Comments do not add obligations to the rules but provide guidance . . . ."). One factor provided in Rule 5.5, comment 14, relates to whether the lawyer's temporary services draw on the lawyer's "expertise developed through the regular practice of law" in a particular body of law. Minn. R. Prof. Conduct 5.5 cmt. 14. Here, the record reflects that appellant has developed experience and expertise in the area of judgment collections through his participation in eight trials and multiple filings.

The Director argues that the guidance in comment 14 weighs against applying the Rule 5.5(c)(4) exception because the record does not establish that appellant's parents-in-law specifically sought appellant for his "recognized expertise . . . involving a particular body of federal, nationally-uniform, foreign, or international law." *See* Minn. R. Prof. Conduct 5.5 cmt. 14. I agree that the record does not meticulously detail the extent to which the law applicable to appellant's collection practice is "nationally uniform" or the

extent to which his experience with collection work is "recognized." But as discussed above, the explanatory language in the comments is not mandatory or exhaustive—it merely provides *examples* of the types of temporary legal services that may satisfy the broad, "reasonably related" catch-all exception under Rule 5.5(c)(4). The broad, "reasonably related" requirement and the principles underlying the guidance in comment 14 surely apply here.[1] The record reflects that appellant developed experience and "expertise" with a particular body of law—collections—in at least eight trials over seven years, including three judgment-collection filings within a single month.

In addition, the clients' relationship to appellant, including their familial connection and the clients' contacts with appellant in his home state, should be considered in the "reasonable relationship" analysis. The comments to the Restatement advise that, in determining whether an out-of-state lawyer's activities "reasonably relate" to the lawyer's practice in a state of admission, "several factors are relevant, including the following: . . . [whether the client] is from the lawyer's home state, has extensive contacts with that state, or *contacted the lawyer there*." Restatement (Third) of the Law Governing Lawyers § 3 cmt. e (emphasis added). Here, the clients contacted their son-in-law, appellant, in his home state of Colorado.

---

[1] The court argues that I reach this conclusion "without citing any legal support." But comments to the Rules of Professional Conduct "explain[] and illustrate[] the meaning and purpose of the rule[s]." Minn. R. Prof. Conduct Scope cmt. 21. They are "intended as guides to interpretation" and therefore are persuasive when applying the Rules of Professional Conduct to the case at hand. *Id.*

The court is also incorrect that my interpretation "allows the exception to swallow the general rule." This is not so. The lawyer's services must still be "reasonably related" to the lawyer's practice in the state of admission. Although this exception is broad, it does not encompass subject matters unrelated to the lawyer's practice.

Additional analogous support is provided in comment 14 to Rule 5.5(c)(4), which states that one factor to consider is whether the "lawyer's client may have been previously represented by the lawyer." Minn. R. Prof. Conduct 5.5(c)(4) cmt. 14. Although the record does not indicate whether appellant ever previously represented his parents-in-law, the principle underlying this comment—a relationship of trust and familiarity with the lawyer's capabilities—is applicable here. The recognition that a sustained lawyer-client relationship would allow an attorney to perform legal work for the client in other jurisdictions, based on confidence and trust, is reflected in the ABA's recommendation for the proposed Model Rule 5.5. Regarding the exception under Rule 5.5(c)(4), the ABA stated:

> [Model Rule 5.5(c)(4)] would respect . . . client-lawyer relationships by permitting a client to retain a lawyer to work on multiple related matters, including *some having no connection to the jurisdiction* in which the lawyer is licensed. . . . [C]lients are better served by having a *sustained relationship with a lawyer or law firm in whom the client has confidence*.

Am. Bar Ass'n, *Client Representation in the 21st Century: Report of the Commission on Multijurisdictional Practice* 30-31 (2002) (emphasis added). The ABA recommendation further explains that in such cases of reasonably related, temporary services under Rule 5.5(c)(4), it is "sufficient to rely on the lawyer's home state as the jurisdiction with the primary responsibility to ensure that the lawyer has the requisite character and fitness to practice law" because the home state "has a substantial interest in ensuring that all aspects of the lawyer's provision of legal services, wherever they occur, are conducted competently and professionally." *Id.* at 30.

Finally, as a policy matter, the implications of the court's decision are troubling and counterproductive. The ABA Model Rule 5.5(c), as adopted by our state, was intended as a broad catch-all that "represent[s] a bold step towards new latitude in [a] multijurisdictional practice of law," which accommodates the increasingly mobile and electronic nature of modern, national legal practice. *See* Rotunda & Dzienkowski, *supra*, at 1100-01, 1112. Today's decision represents a step backwards. By the court's reasoning, when family members or friends—an abundant source of clients—email or call a practitioner admitted in another state, seeking assistance in areas in which the practitioner is experienced and competent, relying on a relationship of trust and confidence, they must be turned away. Those potential clients must then expend unnecessary time and resources to research and hire local counsel—even for minor, temporary services in which the out-of-state lawyer could have provided efficient, inexpensive, and competent service. Simply put, the court's decision is contrary to the principles and policy goals intended by Rule 5.5(c).

In sum, this case involves clients contacting an attorney, their son-in-law, in his home state of Colorado, to request his assistance regarding a small collection matter—an area that reasonably relates to appellant's expertise and experience in his Colorado litigation practice. Based on the relationship and contacts between the clients, appellant, and appellant's practice of law in Colorado, there is a sufficient "reasonable relationship" here to satisfy the broad, catch-all exception under Rule 5.5(c)(4). For the above reasons, I conclude that appellant did not engage in professional misconduct because the exception

in Rule 5.5(c)(4) applies.[2]  Therefore, I would reverse the Panel's decision to admonish appellant.  I respectfully dissent.

LILLEHAUG, Justice (dissenting).

I join in the dissent of Justice Anderson.

CHUTICH, Justice (dissenting).

I join in the dissent of Justice Anderson.

---

[2]    In addition, I observe that any violation of Rule 5.5(a) requires reference to other Minnesota laws or rules to determine whether a lawyer practiced "in violation of the regulation of the legal profession."  Minn. R. Prof. Conduct 5.5(a).  The court's opinion does not cite the substantive "regulation" that appellant violated.  The Director cited a statute that prohibits certain types of conduct except by persons admitted and licensed to practice as attorneys in Minnesota.  *See* Minn. Stat. § 481.02, subd. 1 (2014).  This statute prohibits several types of conduct, including "by word, sign, letter, or advertisement, [] hold[ing] out . . . as being engaged in advising or counseling . . . or in furnishing to others the services of a lawyer[,]" and "giv[ing] legal advice or counsel [or] perform[ing] for or furnish[ing] to another legal services" for a "fee or any consideration" *Id.*  The second type of conduct is inapplicable because appellant did not charge any fee.  The first type of conduct, a "holding out" violation, may or may not be applicable based on appellant's email exchanges with D.R., including his statement that he "represent[ed] [his parents-in-law] in all matters related to [the] delinquent account."  The panel found that appellant "was—although maybe not paid, he certainly has held out the fact that he represented clients."  But there are also persuasive arguments that appellant's conduct was not a "holding out" violation, including, but not limited to, the absence of any communication to the general public.

Although the issue of whether there was an underlying "holding out" violation was not argued by either party and therefore need not be resolved here, there are at least a couple of concerns worthy of comment.  First, it is unclear to me whether, ultimately, appellant's emails were actually a violation of the "hold[ing] out" clause according to the meaning and intent of section 481.02, subdivision 1.  Second, the Director's charges of unprofessional conduct did not clearly specify that appellant was charged with a violation of the "hold[ing] out" clause of this statute.  Instead, the Director summarily referred to the entire statutory provision and described it as prohibiting nonlicensed attorneys from "providing legal services."  This lack of specificity may raise due process concerns.